395 P.2d 471

**C. I. T. CORPORATION, a corporation, Plaintiff-Respondent,**

**v.**

**Marion J. HESS, Defendant-Appellant.**

**No. 9428.**

Supreme Court of Idaho.

Sept. 22, 1964.

Racine, Huntley & Olson, Pocatello, for appellant.

Richards, Haga & Eberle, Boise, for respondent.

4

TAYLOR, Justice.

Plaintiff (respondent) brought this action to recover from defendant (appellant) the balance alleged due upon an "Equipment Lease" contract, dated September 23, 1959, and assigned to plaintiff September 29, 1959. The material terms of the lease were as follows:

"Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the following-described personal property (hereinafter, with all replacement parts, additions, repairs and accessories incorporated therein and/or affixed thereto, referred to as "equipment"): * * *

1—NEW MODEL 38–B BUCY-RUS-ERIE SHOVEL—SERIAL NUMBER 118161 UNIT 70 MOUNTING * * *

and Lessor agrees within—AT ONCE —from the date hereof to cause said equipment to be delivered to Lessee, f. o. b. MALAD, IDAHO.

TERM: This lease is for a term of 36 months, beginning SEPTEMBER 23, 1959, and ending SEPTEMBER 23, 1962.

RENTALS: For said term or any portion thereof, Lessee shall pay to Lessor rentals aggregating $81,038.30, of which $5,000.00 is herewith paid in advance and the balance of the rental, $76,038.30, is payable in 35 equal, successive, monthly rental payments of $2,000.00 each, of which the first is due NOVEMBER 15, 1959, and one final payment of $30,038.30, except for the months of Nov., Dec., 1959, which shall be in the amount of $500.00 each and the months of Jan., Feb., Mar., Apr., 1960, 1961, 1962 which shall be $250.00 each. * * *

INSURANCE: Lessee, at its expense, shall keep said equipment insured, for the term of this lease and any renewals or extensions thereof, for the full insurable value thereof, against fire and theft with extended coverage and against such other risks in such amounts as Lessor may specify. Lessee shall on request of Lessor deliver to Lessor the policies or evidence of insurance with a standard long form endorsement attached thereto, showing losses, if any, payable to Lessor, in form satisfactory to Lessor, together

with receipts for the premiums thereunder.

TAXES: Lessee shall comply with and conform to all laws, ordinances and regulations relating to the ownership, possession, use or maintenance of the equipment, and save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character occasioned by or arising out of such use, and pay promptly when due all taxes and other public or private charges against or upon the equipment, as additional rental therefor.

TITLE: All said equipment shall remain personal property, and title thereto shall remain in Lessor exclusively. Lessee shall keep the equipment free from any and all liens and claims, and shall do or permit no act or thing whereby Lessor's title or rights may be encumbered or impaired. Upon expiration or termination hereof, the equipment shall be returned unencumbered to Lessor by Lessee at Lessee's sole expense and in the same condition as when received by Lessee, reasonable wear and tear resulting from proper use thereof alone excepted. Lessee shall pay rent at the said rate until all said equipment arrives at Lessor's premises. * * *

DEFAULT: In the event of Lessee's default hereunder * * *, or if Lessor deems itself insecure, Lessor and/or its agents may without notice or liability or legal process enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where said equipment may be or by Lessor is believed to be, and repossess the equipment * * *. Should any legal proceeding be instituted by Lessor to recover any moneys due and to become due hereunder and/or for possession of the equipment, Lessee shall pay a reasonable sum * * * as attorney's fees * *. * * *

MISCELLANEOUS: * * * This lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason, and delinquent instalments of rental shall bear interest at the highest lawful contract rate. In case of any default by Lessee hereunder, Lessor may sell the equipment * * *. Any proceeds of sale * * less Lessor's expenses of taking possession, storage, reconditioning and sale * *, shall be applied on the Lessee's obligations hereunder, and

Lessee shall remain liable for the balance of the unpaid aggregate rental set forth above. * * *

PURCHASE OPTION: At any time after OCTOBER 15, 1962, if Lessee has paid in full all rentals owing hereunder and be not then in default hereunder, Lessee shall have the option to purchase said equipment upon giving written notice not less than 30 days prior to expiration of the original term hereof. The purchase price shall be: $1.00. * * *."

The defendant was a general contractor and had previously leased this equipment from Lang Construction Equipment Company under date of March 8, 1959, and had used it approximately two months on road construction west of Boise. The equipment at that time was new. Upon completion of that construction project, defendant returned the equipment in August, 1959, to Lang Construction Equipment Company at Boise. From that time until February, 1962, the shovel stood idle in Boise and was never delivered to the lessee at Malad, Idaho, as required by the contract.

After making payments aggregating $9,339.46, defendant defaulted and in February, 1962, plaintiff took possession of the equipment, and sold it at public sale for $30,500.00. This sum was credited on the contract, and the present action was then brought to recover the unpaid balance of $36,198.84, $1,337.82 paid by plaintiff to Ada county for taxes on the property for the year 1961, $121.20 cost of preparing equipment for sale, and $40.04 cost of publishing notice of sale.

The cause was tried to the court without a jury and judgment was entered in favor of the plaintiff, against the defendant, for $37,697.90, and $1,000.00 for attorney's fee. Defendant brought this appeal from the judgment.

The trial court found that defendant had paid the taxes on the equipment for the year 1960; that plaintiff had paid the taxes for the year 1961 in the amount of $1,337.82, which was properly charged to the account of defendant; that plaintiff had sold the equipment at a fair market value; that the reduced price "was the result of a generally depressed market for used equipment of this type at the time and place of sale"; and that the parties intended a long term sale of the property, not a lease. This last finding was based upon the provision of the contract giving the lessee, defendant, in the absence of default, the option to purchase the property for $1.00, at the end of the term. Although this finding is assigned as error, defendant does not support the assignment in his brief.

Two propositions are urged by defendant (appellant) for the reversal of

the judgment. These are set out in appellant's brief as follows:

"First, was the equipment contract void and unenforceable because it was induced by fraud: Second, assuming arguendo that said contract was valid, did the Appellant ever have any duty to make any payments thereunder when the Lang Company and the Respondent failed to make delivery as required by the contract?"

Fraud was not pleaded by defendant as required by IRCP Rules 8(c) and 9(b), and the trial court made no finding thereon. However, defendant now insists that the issue is properly raised upon this appeal, because evidence of the fraud claimed was admitted upon trial. Defendant relies upon IRCP Rule 15(b), which provides that issues tried by express or implied consent of the parties shall be treated as though raised by the pleadings and that pleadings may be amended to conform to the evidence.

The fraud contended for was that defendant had signed the lease agreement in blank and that the blanks in the printed form had not been filled in by the representative of the Lang company in keeping with the oral agreement had between the parties prior to the execution of the instrument. Defendant testified, as to his conversation with the lessor's representa- tive immediately prior to signing the contract, as follows:

"Our conversation was he wanted to sell me the shovel. I said, 'No, I don't want the shovel. I have no work for it.' He said, 'Well, let's fix up some sort of a rental agreement where you could rent—pay three months' rent on this and we'll hold it until April or May, then if you have work and if you want to purchase it we'll apply the rent you have paid in the past and we'll make a contract out of it.' And I said, 'Well, if that's the case, all right.' I signed the papers and proceeded on to Delta, Utah."

At the trial plaintiff produced only one witness, a Mr. Francis, an employee of the plaintiff, who had not been in its employ at the time of the execution of the contract and was unable to testify as to the circumstances of its execution. Defendant contends that his testimony, being uncontradicted, establishes the claimed fraud. He relies upon the statement made by this court in Langley v. Deshazer, 78 Idaho 376, 379, 304 P.2d 1104, 1105, 1106 (1956), "if the trial court should find the ultimate facts contrary to uncontroverted and nonconflicting evidence, then such findings are reversible on appeal." That rule—dictum, in the Langley case—is not applicable where the uncontradicted testimony flows

from a witness who has a personal interest in the action. Adamson v. Mattson, 32 Idaho 493, 185 P. 553 (1919); First Nat'l Bank of Shenandoah, Iowa v. Hall, 31 Idaho 167, 169 P. 936 (1917); Anno. 62 A.L.R.2d 1191 (1958). Fraud is never presumed, but must be established by clear and convincing evidence, especially where the integrity of a written instrument is assailed. Thomson v. Marks, 86 Idaho 166, 177, 384 P.2d 69 (1963). Therefore, fraud, so far as presented by the evidence, was a question of fact for determination by the trial court. The action of the court in entering judgment enforcing the contract against defendant is tantamount to a finding against him on the issue of fraud which he claims was presented at the trial.

[5] Defendant's second contention is that he did not become obligated to perform because the equipment was never delivered to him at Malad, as required by the contract. Assuming plaintiff's breach was of a nature sufficient to discharge defendant's obligation to perform, it is well recognized that the obligation of a party under a bilateral contract may be recreated by the rendition of further performance, with knowledge of the facts entitling him to be discharged. Restatement of Contracts, § 309 (1932). In Coleman v. Carter, 77 Idaho 210, 212, 289 P.2d 932, 933 (1955), we held a "breach of warranty may be waived by the buyer by conduct inconsistent with its assertion." Also see: Independent Gas, etc., Co. v. T. B. Smith Co., 51 Idaho 710, 10 P.2d 317 (1932). The question presented is whether defendant, knowing of plaintiff's failure to deliver the equipment, by his subsequent conduct recognized the contract as in full force and effect, and thereby waived the provision for delivery "at once" to him at Malad.

Plaintiff's witness testified that from January 7, 1960, through February 7, 1962, defendant made payments on the contract aggregating $9,339.46; that the payment due November 15, 1959, became delinquent, but was paid on January 7, 1960; that defendant again became delinquent, but brought the contract up to date on March 23, 1960, and again on April 22, 1960; that he again became delinquent May 15, 1960, and that the contract was never brought to current status after that date.

Defendant contended that payments made by him to plaintiff were prorated and applied by plaintiff at its pleasure upon various obligations which it held against defendant, and that application of such payments, or portions thereof, to this lease agreement was done without his knowledge or consent. However, a letter dated January 7, 1961, signed by defendant's attorney, purported to authorize the proration of payments made by defendant upon all accounts which plaintiff held against him. Copies of letters written by plain-

tiff, addressed to defendant in 1960, are in evidence requesting payments upon this particular contract, acknowledging receipt of payments in the amounts of the rental installments provided for, and requesting additional payments maturing thereon. From such evidence the court could conclude that defendant knew he was making payments on the contract in issue.

Plaintiff's exhibit J is a letter from defendant's attorney, addressed to plaintiff, dated January 7, 1961, in which the attorney advises plaintiff that he has contacted the insurance agent in Boise and had arranged with him to continue coverage on defendant's equipment. Plaintiff's exhibit I is a memorandum sent to plaintiff by an insurance agency in Boise, advising plaintiff of insurance in the amount of $50,000.-00, covering the equipment here involved and enclosing a copy of the endorsement of such insurance on defendant's equipment policy. This endorsement specifically describes the equipment leased and recites a consideration of an additional premium of $183.05, with a loss payable clause attached in favor of plaintiff. This insurance rider was dated January 13, 1961, effective January 4, 1961.

In the spring of 1960, at the request of plaintiff, defendant moved the equipment from the yard of Lang Construction Equipment Company, in Boise, to the yard of G–K Machinery Company, in Boise.

Defendant paid to Ada county the property taxes on the leased equipment for the year 1960. In explanation he said he made such payment on the advice of his counsel.

It is within the province of the trier of fact to determine whether the evidence in a particular case constitutes a waiver. Independent Gas, etc., Co. v. T. B. Smith Co., 51 Idaho 710, 10 P.2d 317 (1932); North American Ginseng Co. v. Gilbertson, 200 Iowa 1349, 206 N.W. 610 (1925); 78 C.J.S. Sales, § 587. In Deffur v. Tansey, 139 A. 431, 5 N.J.Misc. 1040 (1927), payment on account was regarded as some evidence from which a jury could infer waiver of the time of completion requirement fixed by a construction contract.

We conclude there is sufficient evidence in this record to support a finding that defendant by his conduct manifested an election to continue with the lease agreement and thereby waived the requirement of delivery *"at once"* at Malad. After defendant refused to make further payments and repudiated his contract, plaintiff was relieved from its obligation to deliver the equipment to Malad as a condition precedent to bringing action on the contract. Thereafter, an attempt to deliver would have been "a vain and idle ceremony." Wackerli v. Martindale, 82 Idaho 400, 405, 353 P.2d 782 (1960).

This evidence of continuing recognition and performance of the contract by

defendant is also inconsistent with his first contention that the contract form, originally signed by him, was not filled in by the lessor in accord with the understanding he had with its representative, and evidences an election by him to recognize the contract as it was completed at the time it was assigned to the plaintiff. 37 C.J.S. Fraud § 69; 24 Am.Jur., Fraud, § 216.

Defendant next contended the sale of the shovel by plaintiff at public auction for the sum of $30,500.00 did not represent fair market value. It is generally recognized that a seller is bound to exercise reasonable care and judgment when, as here, he retakes possession of the property and sells it for the account of the buyer. I.C. § 64-409(5); Howse v. Crumb, 143 Colo. 90, 352 P.2d 285, 81 A.L.R.2d 1350 (1960); Hill v. Dominquez, 138 Cal.App.2d Supp. 891, 291 P.2d 203 (1955); Conway v. Skidmore, 48 Wyo. 73, 41 P.2d 1049 (1935); McMillen v. Pippin, 211 Cal.App.2d 674, 27 Cal.Rptr. 590 (1963); General Motors Acceptance Corp. v. Dickinson, 249 Ky. 422, 60 S.W.2d 967 (1933); Motor Contract Co. v. Johnson, 61 Ga.App. 735, 7 S.E.2d 320 (1940); 3 Williston on Sales, Rev.Ed., § 547, p. 168.

Plaintiff's witness Francis testified the sale was carried out under the following procedure:

"Well, going backwards from the time the public sale and at the time of public sale we posted three notices in public places in Boise seven days prior to conducting the sale; placed a newspaper ad in the Statesman Newspapers in Boise for seven days prior to the date of the sale; sent notices of the sale to equipment users and dealers throughout the Southern Idaho, Northern Utah, and Northern California areas. Prior to that we periodically prepared lists of repossessed equipment on which the Bucyrus Erie Shovel was recorded and this list was sent out to, again, equipment users, equipment dealers in the Southern Idaho, Northern Utah, and Northern California areas. Also, we have a man working the area, and he made several personal contacts with equipment users in an effort to obtain a reasonable price for the equipment. He received some bids and rejected them."

On cross-examination, Francis was questioned as follows:

"Q With regard to this sale, was it one where you sold to the highest bidder regardless of price?

"A No, not on any of our sales do we do that. We generally—we always get an appraisal from equipment sellers who are familiar with the equipment involved and from this we establish what we call a bid-in price. We bid —establish a price that is a bid-in at the appraised value of the equipment,

and if the bidders do not come up to this figure then we have a representative there to bid the equipment in at the figure."

Mr. Francis then testified his company's appraisal valued the equipment at less than $30,500.00. Defendant was given notice of the sale and his attorney authorized plaintiff to bid on the equipment.

Defendant's expert witness, Best, testified the market was depressed at the time of the sale in February, 1962, but the shovel could have been sold for $48,000.00 to $50,-000.00.

 Determination of whether a resale is made with reasonable care is for the trier of facts. Howse ·v. Crumb, 143 Colo. 90, 352 P.2d 285, 81 A.L.R.2d 1350 (1960). We conclude there is sufficient evidence to sustain the trial court's finding that the equipment was sold at fair market value. Publication costs of $40.04 were not properly prorated since other equipment than that involved was included in the notice of sale. Accordingly the judgment is reduced by $20.02.

Judgment, as thus modified, is affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, Mc-FADDEN and SMITH, JJ., concur.