540 P.2d 290

**Rod RINGER and Fay Ringer, husband and wife, Plaintiffs-Respondents,**

v.

**Jesse RICE and Dixine Rice, husband and wife, Defendants-Appellants.**

**No. 11702.**

Supreme Court of Idaho.

Aug. 21, 1975.

Eli Rapaich, Rapaich & Knutson, Lewiston, for defendants-appellants.

S. David Swayne, Moscow, Paul C. Keeton and John Reid Tait, Lewiston, for plaintiffs-respondents.

DONALDSON, Justice.

The appellants, Jesse and Dixine Rice, husband and wife, own a business establishment in Pierce, Idaho, called the Timber Inn. On May 26, 1972, the appellants leased the premises to Bruce Bailey. Also on that day, the appellants, Bailey, and William and Donna Gardner entered into a "Tri-Party Memorandum of Agreement" to transfer the inventory and the beer and liquor licenses for the Inn to Bailey.

On October 16, 1972, Bailey assigned his lease to Arthur and Belva Davis. On November 1, 1972, the Davises entered into a partnership with Frank and Juanita Agost for the purpose of running the Inn. On February 17, 1973, the partnership was dissolved and the Agosts were assigned full interest in the leasehold by the Davises. On May 16, 1973, the Agosts assigned the lease and transferred the beer and liquor license to Rod and Fay Ringer, the respondents. On May 21, 1973, the Rices consented to the assignment of the lease from the Agosts to the Ringers.

The original lease expired on January 1, 1973. However, the first of three available one-year options was taken up by the Davis-Agost partnership. On January 1, 1974, Mr. Rice came to the Inn to check the posting of the beer and liquor licenses. Because of what he believed to be faulty posting, Rice told Ringer that the lease was "invalidated" and ordered Ringer to vacate the premises. Ringer did vacate and Rice took possession of the Inn.

The Ringers subsequently brought suit requesting return of the premises to their possession, damages for lost income, damages for loss of use of liquor and beer licenses, and reimbursement for inventory and stock. The Rices in turn counterclaimed for damages arising from physical damage to the Inn and sought a "mandatory injunction" to force the Ringers to transfer the beer and liquor licenses to the Rices. The application for injunction was denied, and trial was had on the merits of the respective claims.

A Memorandum Opinion issued by the district court found that the original lease provided for three one-year options and month-to-month tenancy in the event of holdover; that as a result of discussion by the parties, the respondents entered into the Agreement in 1973 thinking it to be a "long term lease"; that the parties had not agreed to a termination date; that respondents had renewed and posted all necessary licenses with the exception of the state license which was enroute to Pierce; that appellants failed to comply with I.C. § 55-210 in ejecting respondents without a three day notice; that the failure to comply with the statute rendered ineffective any attempt to terminate the lease; and that respondents were entitled to possession of the property. Using those findings, the district court awarded respondents $154.05 for loss of inventory, $100.00 for each month the respondents were denied use of the liquor and beer licenses, $500.00 for each month of lost profits, and possession of the premises to the end of the lease term as extended.

From that decree this appeal is taken.

The appellants initially argue that the district court was incorrect in its determination that options had extended the term of the lease to December 31, 1975.

The following provisions contained within the Lease of Business Property signed May 26, 1972, effective May 28, 1972, are controlling on this point:

"I.

"RENTAL

"Lessee covenants and agrees to pay to lessor the total sum of Two Thousand

Four Hundred Fifty Dollars ($2,450.00) payable in seven (7) monthly installments in the sum of Three Hundred Fifty Dollars ($350.00) per month * * *.

"II.

*"TERM*

"The term of this lease shall extend from May 28, 1972, until December 31, 1972. Any holding over or continued use or occupancy by lessee of the permises after the expiration of the term of this lease shall operate and be construed as a tenancy from month to month at the same monthly rental as set out herein and under the same terms and conditions in force at the expiration of this lease.

\* \* \* \* \* \*

"IV.

*"OPTION TO RENEW*

"Lessor grants to lessee the option to renew this lease for three (3) additional terms of one (1) year each, at the same rental.

"In the event lessee desires to exercise any of these options to renew, lessee shall give lessor written notice of his intention thereof on or before December 1st of the year prior to the year for which the option will be applicable."

The original term of lease ran from May 28, 1972, until December 31, 1972. The lessee was given three options to renew, each for an additional one-year period. The exercise of each option, however, was conditioned upon the lessee giving the lessor written notice of intent to renew on or before the 1st of December prior to the year the option term was applicable. If the lessee failed to exercise any of the above options, the lease clearly expired on December 31 of that year. In the event of continued occupancy after December 31, the lease was to be construed as a tenancy from month-to-month.

The partnership agreement entered into November 1, 1972, between the Davises and the Agosts involved consent by the

Rices to exercise of the first option period running from January 1, 1973, until December 31, 1973. Consent was given without written notice. This, coupled with the district court's finding that the appellants orally assured the respondents the lease was "long-term" caused the court below to conclude that the term of lease ran until December 31, 1975. This finding is not supported by the record.

The respondents gave no notice, written or otherwise, on or before December 31, 1973, of their intention to exercise the second option for an additional year. The district court, however, found that no notice was necessary. In addition to relying upon its finding of oral assurance, the court apparently relied upon a clause contained within the assignment provisions of the May 16, 1973, agreement between the Agosts and Ringers. That clause reads as follows:

"WHEREAS, by an agreement in writing dated May 22, 1972, by and between Jesse W. Rice, Dixine Rice, Bruce Bailey, William Gardner and Donna Gardner in a designated tri-party agreement and a lease of the same date between Jesse W. Rice, Dixine Rice and Bruce Bailey, the predecessor of the assignor herein, leased, and entered into certain covenants relating to a business known as the "Timber Inn" of Pierce, Idaho, which expired December 31, 1972, *with options to renew which were taken up* \* \* \*." (emphasis added)

A crucial point overlooked by the district court is that the Rices were not parties to the above agreement. The Rices therefore were not bound by its terms. It is long recognized that an assignee to an agreement cannot elevate himself to a more favorable position by executing an independent agreement contrary to the terms of the original document. The above provision is therefore not supportive of the court's action.

Furthermore, the oral assurances relied upon were alleged to have been

made in April, 1973, prior to the time respondents took an assignment of the lease from the Agosts. Oral stipulations, agreements, and negotiations preliminary to a written contract are presumed merged therein and will not be admitted to contradict the plain terms of the contract. *Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 439, 510 P.2d 1091 (1973); *Paurley v. Harris,* 75 Idaho 112, 116, 268 P.2d 351 (1954). In the facts at bar, the terms and conditions of the option renewal were not met. Under the terms of the lease it was possible to exercise only one option per year. Therefore, construing the contract in accordance with its terms, we hold that the lease expired on December 31, 1973.

In so holding, we need not consider whether the respondents were in default of the terms and conditions of the lease thereby entitling the appellants to reenter the premises and dispossess the respondents under the provisions of Section XIV of the lease. Nor must we consider the three day notice requirements set forth in I.C. § 55–210. It is clear that section applies only where a lessor enters premises under a right of reentry. In the case at bar, the appellant had the right to enter the premises because the lease had expired. As such, the respondents were not entitled to possession of the premises subsequent to December 31, 1973. Rice advised Ringer the morning of January 1, 1974, that the tenancy was over, therefore no month-to-month tenancy came into being because there was no holding over or continued occupancy by the lessees after that date.

The district court determined that the respondents were entitled to damages for loss of merchandise in the amount of $154.05 plus refill of a large propane tank to its full capacity. The district court further determined, however, that the above damages must be offset in the amount of $213.17 for obligations of the respondents paid by the appellants subsequent to entry.

We hold that the above finding of damages for loss of merchandise and offset for obligations is correct. However, since restoration of the propane tank was premised upon placing the respondents in possession of the premises, such an award is not justified. We therefore remand this issue to the district court for a determination of damages to be awarded the respondents for the amount of propane in the tank at the time they quit the premises. Other awards of damages and possession of the leasehold to respondent by the district court are not supported by the record and are erroneous.

We must now consider whether the appellants are entitled to injunctive relief under their counterclaim. It appears that the purpose of the provisions set forth in the "Memorandum of Agreement" of December 2, 1970, the "Tri-Party Memorandum of Agreement" of May 26, 1972, and the "Memorandum of Agreement" of May 26, 1972, was to protect appellants' interest in the liquor and beer licenses. Pursuant to those instruments, the licenses should have remained on the premises. We therefore remand the case to the district court and direct that a mandatory injunction issue requiring the respondents to do all acts necessary to transfer said licenses of the Timber Inn to the appellants in the event such has not already occurred. On remand, the district court should determine what reimbursement, if any, the respondents are entitled to for appellants' use, if any, of the 1974 liquor and beer licenses. The district court should further award respondents any reimbursement deemed just and fair for renewal and transfer of said licenses.

Reversed and remanded to the district court for determination of the issues expressed herein. Costs to appellants.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.