650 P.2d 657

**RIVERSIDE DEVELOPMENT COMPANY,**
Plaintiff-Respondent,

v.

**James W. RITCHIE and Richard Farnsworth, dba the Treehouse Family Restaurant, Defendants-Appellants.**

Nos. 13122, 13141.

Supreme Court of Idaho.

Aug. 31, 1982.

516

W. Marcus W. Nye, of Racine, Huntley & Olson, Pocatello, for defendants-appellants.

Lowell N. Hawkes, Pocatello, for plaintiff-respondent.

BAKES, Chief Justice.

## I

## FACTS

The previous opinion of this Court in this matter is hereby withdrawn, and the following is substituted therefor. Appellants appeal from a partial summary judgment terminating a lease between them and plaintiff respondent Riverside Development Company. We affirm.

In January, 1975, with Ritchie acting as guarantor, Farnsworth entered into a twenty year lease agreement with Riverside Development for the lease of a shopping center restaurant known as "The Tree House Family Restaurant." Therein, Farnsworth was required to pay a base monthly rent of $2,250 until June 1, 1981, when the base monthly rent was to be reduced to $1,650. Additionally, Farnsworth was to pay a percentage rent equal to 8% of all gross sales in excess of $270,000 during each lease year. Following June 1, 1981, Farnsworth was to pay a percentage rent equal to 6% of the gross sales in excess of $300,000.

According to the lease, if the tenant failed to pay any rent due within ten days after the due date, Riverside had the right to declare the lease terminated, the right to reenter and relet the premises, and the right to obtain damages for any deficiency in reletting the premises. During the first year of the lease, Farnsworth generally paid the rent in a timely fashion, but following January, 1976, rentals were not paid in a timely fashion, and on the average were late 43.5 days. Nevertheless, those late payments were accepted by Riverside. On June 5, 1976, the Teton Dam failed causing severe flood damage to the restaurant, which was closed until August 21, 1976. The base monthly rental for that period was paid by appellants, but not until October 26, 1976.

Following the receipt of the report of gross sales for 1976 (received in March, 1977), a dispute arose between the parties regarding the 1976 percentage rent due as a result of gross sales in 1976. In a notice of default sent to Farnsworth on March 21, 1977, Riverside asserted that since the restaurant had only been open for 78.9% of the year due to the Teton Dam disaster, the percentage rent of 8% was to be calculated on the basis of a reduced threshold figure of 78.9% of $270,000, or $213,041. Conversely, Farnsworth argued that the percentage rent was not subject to proration and that it was only payable if the restaurant had gross sales exceeding $270,000 for all of 1976. The March 21, 1977, notice also demanded that arrears in personal property taxes be paid. Following the default notice of March 21, 1977, a series of correspondence ensued between the parties; however, there was no resolution to the dispute. Farnsworth continued to pay the base monthly rent, albeit in a delinquent manner, until May 13, 1977, when Farnsworth ceased paying to Riverside, but opened his own trust account into which he deposited the base monthly rent of $2,250 for the month of May, 1977.

On May 20, 1977, Riverside wrote to Farnsworth offering to forego further action in the matter provided that there was payment within ten days of the May minimum rent, the first quarter percentage rent for 1977, and the 1976 personal property taxes, and that the unpaid balance of the claimed 1976 percentage rent plus interest

be paid in three installments. The offer was also premised upon the condition that failure to perform the lease provisions punctually or completely would "void and nullify the herein contained terms and agreements." Also, the offer further stated that none of Riverside's claims regarding default of the lease would be surrendered unless the conditions of the offer were fully discharged. From the record, it does not appear that any response was received to the offer. On June 22, 1977, Riverside sent a notice of termination, as recognized in appellant's brief. Thereafter, Riverside brought the instant action for termination of the lease and damages on July 15, 1977. Additionally, at unspecified times Farnsworth deposited the base monthly rents for June and July into the trust account which he had established. In September, 1977, following filing of the suit, Farnsworth paid to Riverside the base monthly rent for May, June, July, August and September, which was accepted. Thereafter, during the pendency of the suit, base monthly rent was paid on a fairly regular but still delinquent basis.

In early 1978, plaintiff Riverside and defendants Ritchie and Farnsworth each filed motions for summary judgment. At the time of oral argument, they effectively stipulated that there were no genuine issues of material fact in respect to the disputed percentage rental and the termination of the lease. After considering the parties' arguments, the district court ruled that there was no 1976 percentage rental owing

from Farnsworth to Riverside. The court did, however, grant Riverside termination of the lease "because of the longstanding defaults" of the defendants in regard to rent and taxes. In so holding, the district court rejected the asserted defense of waiver, stating "the receipt and retention of funds paid after notice of default and after the action was filed, under the circumstances of this case, does not constitute a waiver . . . ." The defendants have appealed the termination of the lease. No question is presented by either party concerning the district court's ruling on the 1976 percentage rent.

## II

### WAIVER

The appellants first argue that the district court erred in concluding that Riverside had not waived its right to terminate the lease. The existence of waiver ordinarily is a question of fact, and if there is any substantial evidence in the record to support a waiver it is for the trier of fact to determine whether the evidence establishes such a waiver. *C.I.T. Corp. v. Hess,* 88 Idaho 1, 9, 395 P.2d 471, 475 (1964); *Independent Gas & Oil Co. v. T. B. Smith Co.,* 51 Idaho 710, 724–25, 10 P.2d 317, 322 (1932). In the present case there was no jury. The district court was to be the trier of fact. Although this matter was decided on summary judgment, the parties, by their mutual motions for summary judgment on the same issues and theories,[1] and by state-

1. A prerequisite to summary judgment is that there be "no genuine issue as to any material fact." I.R.C.P. 56(c). When previously faced with opposing motions for summary judgment, this Court has stated that such "does not in itself establish that there is no genuine issue of [material] fact." *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979); *Farmers Ins. Co. v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976). This is so because by filing a motion for summary judgment a party concedes that no genuine issue of material fact exists under the theory that he is advancing, but does not thereby concede that no issues remain in the event that his adversary seeks summary judgment upon different issues or theories. *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323 (10th Cir. 1967).

However, where opposing parties both move for summary judgment based on the same evidentiary facts and *on the same theories and issues,* the parties effectively stipulate that there is no genuine issue of material fact. The Fifth Circuit emphasized this distinction when it stated the following:
"As a general rule the filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion if, indeed, there exists a genuine factual dispute concerning a material issue .... As explained in *Stuart Plastering,* [512 F.2d 1017 (5th Cir. 1975)] the rationale of this rule lies in the fact that each party may be basing its motion on a different legal theory dependent on a different set of material facts.

ments made in their oral arguments on the matter, effectively stipulated that there was no genuine issue of material fact which would preclude the court from entering judgment without a trial.

This Court has held in the past that even though there are no genuine issues of material facts between the parties "[a] motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions." *Lundy v. Hazen,* 90 Idaho 323, 326, 411 P.2d 768, 770 (1966). Such a rule is proper where the matter is to be tried to a jury, because even though evidentiary facts may be undisputed, those evidentiary facts may yield conflicting inferences as to what the ultimate facts of a case are. If such conflicting inferences are possible, then summary judgment would deprive the parties of the right to have the jury make the decision in the matter. Nevertheless, where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences. *See Pierson v. Jones,* 102 Idaho 82, 85, 625 P.2d 1085, 1088 (1981); *Hollandsworth v. Cottonwood Elevator Co.,* 95 Idaho 468, 471, 511 P.2d 285, 288 (1973); *Angleton v. Angleton,* 84 Idaho 184, 198, 370 P.2d 788, 796 (1962).

We were recently faced with a somewhat similar situation in *Moss v. Mid-American Fire & Marine Ins. Co.,* 103 Idaho 298, 647 P.2d 754 (1982). In that case the dispute involved the question of whether the insured had made "regular and frequent" trips within the meaning of exclusionary language in an automobile insurance policy. The matter was to be tried to the court, but both parties filed cross motions for summary judgment. The trial court granted sum-

mary judgment in favor of Mid-American, ruling that the terms "regular and frequent" were not ambiguous, and that Moss had made "regular and frequent" trips within the meaning of those exclusionary terms. Notwithstanding the cross motions for summary judgment, this Court reversed, holding that the trial court erred in concluding that the terms "regular and frequent" were unambiguous, and remanded the case to the trial court to determine the meaning of "regular and frequent" as a question of fact, and not as a question of law, as it had done.

*Moss* is distinguishable from the present case for the following reasons. Both cases focus on finding an ultimate question of fact. In the present case, that question is whether a waiver existed. In *Moss,* it was whether Moss made "regular or frequent" trips. The phrase of "regular and frequent" as used in *Moss* was not a creature of judicial or legislative origins, but of contract. Because the contractual standard itself was ambiguous, the elements of that standard rested upon the intent of the parties and therefore formed a question of fact and not law. *See Clark v. St. Paul Property & Liability Ins. Co.,* 102 Idaho 756, 639 P.2d 454 (1981). The summary judgment in *Moss* was thus reversed, because the ultimate question of whether Moss made "regular and frequent" trips was itself not sufficiently defined to permit the question to be answered without evidence showing the meaning which the parties intended to give to the phrase "regular and frequent."

In the present case, since the elements of waiver are not dependent upon the contractual intent of the parties, as in *Moss,* but are determined by the common law, the ultimate question of whether Riverside waived its right to terminate the lease was properly the subject of a summary judgment once the parties agreed that there

"When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears. Thus, in qualifying the general rule, this court has said: 'Nonetheless, cross motions may be probative of the non-existence of a factual

dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.' " *Schlytter v. Baker,* 580 F.2d 848, 849 (5th Cir. 1978) (citations omitted).

were no genuine issues of material fact.[2] Consequently, our review of the waiver issue extends only to determining whether the record is sufficient to justify the district court's finding that Riverside did not waive its right to terminate the lease.

The appellants assert that waiver occurred due to the acceptance of rent by Riverside subsequent to the breaches which gave rise to the termination of the lease.[3] Waiver is foremost a question of intent; and "[i]n order to establish waiver the intention to waive must clearly appear . . . ." *Neitzel v. Lawrence,* 40 Idaho 26, 31, 231 P. 423, 425 (1924); *City of Coeur d'Alene v. Spokane Inland Empire RR. Co.,* 31 Idaho 160, 169 P. 930 (1917). An intent to waive a right may, however, be established by conduct. *E.g., Sullivan v. Burcaw,* 35 Idaho 755, 763, 208 P. 841, 843 (1922).

In the context of lease agreements, acceptance of rent accruing subsequent to a breach is a well recognized form of conduct which may establish a lessor's intent to waive a breach of a lease agreement. *See* Annot. 109 A.L.R. 1267 (1937). Certainly, where, after a breach, the lessor accepts subsequently accruing rent without having taken action to terminate the lease, it can be said that the lessor has by accepting the rent evidenced his intent to waive the breach and to continue in the lease agreement. Annot., 109 A.L.R. 1267, 1269–74 (1937). However, where the lessor takes definite action to terminate the lease by sending notice of termination and thereafter proceeds within a reasonable time to regain possession of the premises, but nevertheless also accepts rent subsequent to the notice of termination, the intent of the lessor to waive the breach by his acceptance of rent is far from clear. It has been stated that,

"The acceptance of rent subsequent to the bringing of an action for possession, or after a reentry, for breach of a covenant or condition, has been held not to constitute a waiver of the forfeiture, the theory being that such an action or reentry shows an irrevocable intention to avoid the lease." Annot. 109 A.L.R. 1267, 1281 (1937).[4]

Indeed, such acceptance will generally be motivated by the fact that the tenant unlawfully continues in possession following termination, thereby entitling the lessor to compensation for such detention of the property. The doctrine of waiver is an equitable doctrine based upon fairness and justice. However, the lessor, who has mortgages, taxes and other expenses to pay, cannot fairly be said to be a beneficiary of such fairness and justice as long as he is forced to avoid the acceptance of any compensation for a tenant's unlawful possession of the property (which may extend for periods of months or years due to litigation), because of the threat that as soon as he does the tenant will cry waiver. *Cf. Lindsey v. Normet,* 405 U.S. 56, 72–73, 92 S.Ct. 862, 873, 31 L.Ed.2d 36 (1972) (landlord entitled to procedures for swift repossession since the tenant would otherwise be able to deny the landlord "the rights of income incident to ownership" while the "many expenses of the landlord continue to accrue whether the tenant pays his rent or not.").

2. It was for the court below, as the trier of fact, to determine whether the evidence supported the inferences necessary to support a finding of either waiver or non-waiver. That is exactly what the district court did in determining that no waiver existed. To reverse and remand this case to the district court, ordering it to do in another proceeding what it has already done, *i.e.,* draw the appropriate inferences from the undisputed evidentiary facts, would be an extreme waste of judicial resources and an utterly useless act.

3. For the purposes of this discussion, we assume that all of the rent accepted by Riverside

with which appellants take issue accrued after the breaches, because a substantial part of the rent accepted clearly did so accrue. Generally, it is held that the acceptance of rent after a breach which accrued before the breach does not constitute a waiver. Annot. 109 A.L.R. 1267, 1268–69 (1937).

4. Elsewhere the same authority states that such does not generally hold true for breaches by reason of the non-payment of rent, Annot. 109 A.L.R. 1267, 1283 (1937); however, no reason for such a distinction is mentioned, and we have not discovered one.

Such was recognized long ago by the Court of Appeals of Kentucky when it stated the following:

> "[I]t would not be right to declare a waiver of forfeiture by accepting rent after action brought, for the reason that, for all time the tenant is in possession, he would be liable for use and occupation; and, if the landlord is willing to receive and the tenant to pay, the contract rental, this would be but an adjustment of the liability for use and occupation. The right of action for forfeiture had accrued, and the tenant was notified by the action that the landlord would claim the forfeiture, and it seems to us no harm would follow to the tenant; his rights could not be prejudiced." *Cleve v. Mazzoni*, 45 S.W. 88, 89 (Ky.1898).

Additionally, as recognized by the district court below, the acceptance of the lessee's payments in such a situation will in fact serve a mitigating function to the extent that it avoids the accumulation of interest which would otherwise be payable to the lessor for the withholding of rent or damages as the case may be.

■ We recognize that some jurisdictions have concluded that the acceptance of subsequently accruing rent, notwithstanding definite actions by the lessor to terminate the lease, constitutes a waiver of the lessor's right to terminate the lease; *see* Annot. 109 A.L.R. 1267, 1283–84 (1937); and that some jurisdictions even seem to have created a *per se* rule of waiver in such circumstances. *E.g., Woodland Theatres, Inc. v. ABC Intermountain Theatres, Inc.,* 560 P.2d 700 (Utah 1977). However, as stated previously, waiver is primarily a question of intent, and we believe the better policy is to judge each situation on a case by case basis. In regard to similar questions involving the theory of equitable estoppel,[5] this Court has rejected the adoption of rigid standards, relying rather on a case by case analysis, *City of Nampa v. Swayne,* 97 Idaho 530, 534, 547 P.2d 1135, 1139 (1976); *Dalton Highway Dist. of Koo-*

*tenai County v. Sowder,* 88 Idaho 556, 562, 401 P.2d 813 (1965), and we think that policy is prudent here.

■ In the present case the record shows that Riverside repeatedly accepted significantly delinquent rent payments from appellant Farnsworth in an apparent attempt to help him establish a successful business. On May 20, 1977, Riverside sent a request for payment of, among other things, the May, 1977, minimum rent which was delinquent, stating that it would delay or suspend action only if the rent was paid within ten days. The rent was not paid, and on June 22, 1977, Riverside notified Farnsworth that it was terminating the lease. An action to terminate the lease was then filed on July 15, 1977. Despite the fact that there was some dispute over whether Farnsworth was in default on all of the bases claimed by Riverside, Farnsworth was clearly in default as to the May, 1977, minimum rent, and Riverside had a right to terminate the lease on that basis. Riverside was not compensated for Farnsworth's summer occupancy of the premises until well after the action was filed. Additionally, both parties agreed to a lease provision stating that "no breach of a covenant or condition of this Lease shall be deemed to have been waived by Landlord, unless such waiver be in writing signed by Landlord." These facts are consistent with the trial court's finding that Riverside, by accepting those payments, did not intend to relinquish its right to terminate the lease. Indeed, Riverside proceeded with the termination action. Consequently, we conclude that the record is sufficient to support the court's finding that Riverside did not waive its right to terminate the lease by accepting appellant's payments following the notice of termination. It may well be that in a different case the facts surrounding the lessor's acceptance of rent from a lessee following a notice of termination, such as an unreasonable delay or failure in enforcing the notice of termination, *see Hoebel v. Raymond,* 46 Idaho 55, 60, 266 P. 433, 434

---

5. Waiver arising out of conduct is in the nature of estoppel. *Idaho Bank of Commerce v. Chas-* *tain,* 86 Idaho 146, 154, 383 P.2d 849, 853–84 (1963).

(1928), might support a conclusion that the lessor in fact intended to waive the breach and continue in the lease. However, in this case, the district court found that Riverside did not intend to waive the breach, but simply accepted the payments in satisfaction and mitigation of the amounts that Farnsworth owed Riverside for its holding over. Since the record supports such a finding, we will not disturb it. *E.g., Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

■■■■■ Respondents also argue in regard to waiver that Riverside's repeated acceptance of delinquent rent prior to termination constituted such a "course of conduct" as to waive strict compliance with the terms of the lease. That is to say that by the continued acceptance of late rent Riverside waived its right to terminate the lease by strictly enforcing the rent deadlines in the lease. We agree that a continuing course of conduct by a lessor which misleads a lessee to his prejudice in regard to the lessor's intent to strictly enforce the terms of the lease may constitute a waiver, *cf. Sullivan v. Burcaw,* 35 Idaho 755, 763, 208 P. 841, 843 (1922) (waiver by course of conduct in the context of land sale contract). However, a lessor should certainly not be precluded from terminating a lease for the late payment of rent or other obligation simply because he has been lenient on prior occasions in accepting late rent. Such is emphasized by the following statement:

> "Mere leniency on the part of a lessor in exacting the prompt payment of rent, however, will not preclude him from enforcing forfeiture for the subsequent nonpayment of rent, for, as has been well said, if the leniency of a landlord in not insisting upon the strict payment of rent according to the terms of a lease would be a defense to an action to recover possession of the premises, then, indeed, the lot of a tenant might often be a hard one, since, for their own protection, landlords would insist upon strict compliance with the contract." 49 Am.Jur.2d, Landlord & Tenant § 1065 (1970).

While it is true that Riverside repeatedly accepted delinquent rental payments, the May 20, 1977, notice made it clear that Riverside would no longer tolerate the delinquencies, and that it would suspend further action on the breaches only if the appellant paid the May minimum rent within ten days. Even after that notice the delinquencies continued. Furthermore, the appellant agreed to a non-waiver provision stating that one or more waivers of any covenant or condition by the landlord should not be construed as a waiver of subsequent breaches. Under the circumstances, we conclude that the record supports the district court's finding that Riverside's right to terminate the lease had not been waived, and we will not disturb it. *E.g., Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

### III

### NOTICE

The appellants next argue that Riverside failed to give three days notice demanding payment of rent or possession of the property, as required under our unlawful detainer statute, I.C. § 6–303(2), and therefore may not obtain termination of the lease. In particular, appellants rely upon our decision in *Schlegel v. Hansen,* 98 Idaho 614, 570 P.2d 292 (1977). In *Schlegel,* the lessor, Hansen, reentered the premises leased by him to Schlegel without notice. Hansen asserted that the reentry was based upon a default in Schlegel's payment of rent. Schlegel brought a declaratory judgment action seeking a determination of rights under the lease. The trial court dismissed the action pursuant to I.R.C.P. 41(b). After reviewing the record, this Court concluded that there was no evidence to support Hansen's action in terminating the lease because there was neither a forfeiture provision in the lease, nor notice pursuant to I.C. § 6–303(2) by Hansen to Schlegel demanding payment within three days or possession of the property. Due to the absence in the record of evidence showing either of those elements, the judgment was reversed and remanded for a new trial.

In applying *Schlegel* to the case at bar, it must be observed that the remedy of forfeiture permitted under our unlawful detainer statutes, I.C. §§ 6–303, –316, is merely cumulative to any contractual right of reentry provided for in the lease agreement. *See Hunter v. Porter,* 10 Idaho 72, 78–80, 77 P. 434, 436 (1904); 3A Thompson on Real Property § 1370 (1981); 50 Am. Jur.2d, Landlord & Tenant § 1227 (1970); *cf.* I.C. § 55–210 (recognizing lessor's contractual right of reentry upon three days' notice). For that reason, *Schlegel* discussed both the *contractual* remedy of forfeiture and the *statutory* remedy provided under our unlawful detainer statutes. *See Hunter v. Porter, supra.* As stated in *Schlegel,* a lessor's contractual right to forfeiture must be clearly stipulated in order to be enforceable, 98 Idaho at 615, 570 P.2d at 293. However, even absent a contractual forfeiture remedy, such remedy is still available in an unlawful detainer action, I.C. § 6–316. Consequently, it was recognized in *Schlegel* that absent a clear contractual right to declare forfeiture, "a landlord may not, without the express consent of a tenant, repossess his property without resorting to remedies provided in those [unlawful detainer] statutes." 98 Idaho at 616, 570 P.2d at 294 (citation omitted). Absent either a clear contractual forfeiture provision, or notice under I.C. § 6–303(2), it was necessary in *Schlegel* to reverse the judgment.

In the present case, it is clear that the Riverside lease contained a very definitive contractual right to terminate the lease upon default of the lessee. Riverside thus had a choice of pursuing either its contractual or statutory remedy. Such a situation was previously before this Court in *Hunter v. Porter,* 10 Idaho 72, 77 P. 434 (1904).

In *Hunter,* the lease permitted the lessor to terminate upon thirty days' notice to the lessee of default by the lessee. 10 Idaho at 78, 77 P. at 436. The Court plainly stated that the provision did not extend the time for payment, but was simply to allow the tenant time to secure other premises. 10 Idaho at 79–80, 77 P. at 436. Upon the lessee's default the lessor, rather than relying on his contractual right to terminate the lease, proceeded under the unlawful detainer statute by giving the tenant notice to either pay within three days or quit the premises. The tenant failed to pay, and the trial court terminated the lease. On appeal, the tenant argued that termination could not occur without the thirty-day notice provided for in the lease. This Court rejected that argument concluding that the landlord was free to pursue his statutory remedy rather than his contractual right of termination. It is clear from the Court's reasoning in *Hunter* that the lessee was in fact benefited by the lessor's choice of options since the unlawful detainer statute recognized a continuation of the lease and allowed the lessee three days to cure the default, whereas there was no opportunity to cure under the contractual remedy.

Here, the contractual remedy is in fact more lenient than the unlawful detainer statute. The Riverside lease not only provides for thirty days' notice, but also permits the appellants to cure the default within that thirty days, in stark contrast to the lease provision in *Hunter.* Thus, the thirty days permitted to cure the default under the lease in the present case is much more favorable to appellants than the three day notice allowed under I.C. § 6–303(2). Consequently, in this case, notice sufficient to meet the notice requirements in the Riverside lease would also be more than sufficient to satisfy the notice requirement of I.C. § 6–303(2). The question to be answered here is, therefore, whether the thirty day notice requirement provided for in the contract was satisfied by Riverside.[6]

---

6. We note also that since Riverside agreed to a more lenient provision for termination and notice than that required under I.C. § 6–303(2), Riverside was bound by that means of termination and giving notice, and that *Hunter* does not provide an avenue for circumventing such an agreement. *Cf. Stockmen's Supply Co. v. Jenne,* 72 Idaho 57, 63, 237 P.2d 613, 617 (1951); *Marks v. Strohm,* 65 Idaho 623, 628, 150 P.2d 134, 136 (1944) (parties are bound by the terms of their own notice).

■ In the present case, Riverside gave appellant Farnsworth notice of default on May 20, 1977, for his failure to pay the May, 1977, minimum rent. On June 22, 1977, the appellant had still not cured the default, and Riverside sent a notice of termination. Farnsworth thus had more than the thirty days permitted in the lease to cure the default.[7] No reentry was attempted by Riverside within three days of the termination notice, and thus the notice requirement of I.C. § 55–210 was met.[8] Consequently, we conclude that Riverside provided appellant Farnsworth with adequate notice to support termination of the lease.

## IV

### FORFEITURE

As the final issue on appeal, it is argued that the court below erred in terminating the lease without regard to certain equitable interests claimed by Farnsworth. In particular, Farnsworth argues that a large part of his minimum monthly payment was being applied by agreement to Riverside's lease/purchase[9] of restaurant equipment from Litton Industries, and that under his lease agreement with Riverside, all of Riverside's interest in that equipment was to be assigned to him upon expiration of the premises lease in 1981. In view of those claims it is asserted that the district court erred in treating the lease agreement with Riverside as a "bare lease" in which Farnsworth had no equitable interest, and in therefore refusing to review the possibility of granting Farnsworth equitable relief from forfeiture.

■ However, the record shows that this particular issue was not presented to the district court until after the parties had stipulated that there were no genuine issues of material fact, and after the trial court had rendered its memorandum decision terminating the lease. The appellants raised the issue by means of a motion to alter or amend the judgment under I.R.C.P. 59(e). Neither the motion nor the briefs in support of the motion stated any reason for the appellant's failure to raise the issue of equitable relief prior to the court's decision in

7. Although the notice of May 20, 1977, required that Farnsworth pay the May rent within ten days, rather than thirty days, Farnsworth had *in fact* more than thirty days to cure the default, and failed to cure the default within that time period. As long as Farnsworth had notice of the breach, and failed to cure the same within thirty days, Riverside was entitled to terminate the lease pursuant to the contract provision. *See Enders v. Wesley W. Hubbard & Sons, Inc.*, 95 Idaho 590, 598, 513 P.2d 992, 1000 (1973).

8. I.C. § 55–210 does not require that notice of termination specifically state that the tenant has three days to vacate the premises; rather, it states that "reentry may be made at any time after the right has accrued upon three (3) days' notice . . . ." Such notice was referred to in *Hunter v. Porter*, 10 Idaho at 80, 77 P. at 436. The Court there stated that if the landlord had exercised his contractual right to terminate the lease, "the tenant would not be an unlawful detainer until a further notice of three days should be served upon him requiring him *to vacate*." (Emphasis added.) Reference to a three-day notice in that context, for at least two reasons, could only mean notice under I.C. § 55–210, rather than I.C. § 6–303(2). First, to construe the three-day notice to be that required by I.C. § 6–303(2) would contradict the very reasoning employed by the *Hunter* Court in reaching its decision. The Court clearly stat-

ed that the proceeding in unlawful detainer was primarily a recognition of the continuation of the lease, since opportunity was thereby given to the tenant to cure the lease; whereas invocation of the contractual remedy in that case simply *terminated* the lease. Construing the notice referred to in the quote as one under I.C. § 6–303(2) would thus require a continued recognition of the lease by permitting further opportunity to cure, where in fact, under the reasoning of the Court, the lease could have clearly been terminated under the contractual remedy without further opportunity to cure. Second, the notice referred to in the quote was simply a notice to *vacate*, consistent with I.C. § 55–210, and not one *to pay rent or vacate* as required under I.C. § 6–303(2).

Additionally, we note that this case is distinguishable from *Ringer v. Rice*, 97 Idaho 105, 540 P.2d 290 (1975), where we held that I.C. § 55–210 was not applicable to reentry upon the *expiration* of a lease. The present case involves the termination of a lease for cause, rather than upon the mere expiration of the term, as was the case in *Ringer*. Thus, I.C. § 55–210 is applicable here.

9. The alleged equipment lease contains an option to purchase the equipment for a nominal consideration at the expiration of that lease.

the matter. Consequently, it was within the court's discretion to deny the motion to amend or alter the judgment. The judgment is affirmed. Costs to respondent.

DONALDSON, J., concurs.

McFADDEN and BISTLINE, JJ., concur in the result.

McFADDEN, Justice, concurring.

I concur in the conclusion reached, but my concurrence is not to be considered as approval of the discussion of the case of *Moss v. Mid-America Fire & Marine Ins. Co., supra.* In regard to that last mentioned case I continue to adhere to my views expressed in my dissent therein.

BISTLINE, Justice, concurring in the result.

In the earlier and now withdrawn opinion, a unanimous court reversed the summary judgment, noting in the opinion that "both waiver or mitigation could reasonably be inferred from the same undisputed evidence and it would be for the trier of fact and not the trial judge at summary judgment to make the decision as to waiver or mitigation." On rehearing, the Court's opinion, after observing that this was not a jury case, broadly amends the rules governing summary judgment with the declaration that "the parties, by their mutual motions ... effectively stipulated that there was no genuine issue of material fact which would preclude the court from entering judgment without trial," and the further statement that "where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences."

This may be an amendment to the rule which will meet with favor, in regard to which it will be appropriate to hear from the trial bench and bar. For my part, I am open to persuasion, noting, however, that it may allow dispute of the question as to whether both sides have "effectively" stipu-lated when they have not actually stipulated. Attorneys know how to enter into valid and binding stipulations. A better rule, I think, and one upon which expression of further thought from the bench and bar is solicited, would be that in *all* cases in which cross-motions for summary judgment are made, the trial court is empowered to decide the case, even to the extent of determining some issue of fact, or inference therein, that appears to be in dispute. Such a rule would be the equivalent of the former procedure under code pleading and practice where both parties moved for a directed verdict at the close of a jury trial. As the older practitioners will remember, such mutual motions worked a dismissal of the jury, and any unresolved questions of fact were for the trial court's determination.

As far as the instant case is concerned, it seems inappropriate that the litigants and their attorneys are now told, after the fact, of this new change in the rule and its applicability to their case. It would seem that the parties should have had some voice in the matter, and it would also seem that the Court might have been well advised to have had broader input before amending a rule which affects—not the courts—but the litigants and practitioners.

It also seems that, as applied to the instant case, the parties might not have been so quick to (1) waive jury trials, and (2) file cross-motions for summary judgment if forewarned that they were in essence "effectively" stipulating that the court could determine the inferences deducible from the presented evidence. Other parties henceforth are forewarned.

It appears to me that a sizable share of appellate litigation stems from summary judgment procedures, some undoubtedly in good faith and others appearing in the nature of stalling, file building or harassment. Many have been the cases erroneously decided at summary judgment wherein it appears that a trial on the merits would have encompassed less than a day. For many, many years the practice of law went well in Idaho without the benefit of summary

judgment procedures. On the other hand, in the cases which are not appealed and which this Court does not review, summary judgment procedures may indeed serve a good purpose in efficiently resolving controversies.

It may very likely have been that had our earlier opinion stood intact, the trial court, as trier of fact, at a trial on the merits with live testimony might have come to the same conclusion which was arrived at in the summary judgment procedure. In that event then, those who strive for efficiency would be fortified in believing that the Court today has formulated a good amendment. Nevertheless, there is much to be said for the more thorough probing of witnesses that occurs when the court hears testimony live from the witnesses—which, while it may not alter concrete facts, can certainly influence inferences.

Touching briefly on the Court's comparison of this case with *Moss v. Mid-American Fire & Marine Insurance Co.,* 103 Idaho 298, 647 P.2d 754 (1982), initially I note it was in that case the Court first toyed with the rule it announces today, but its advocates did not command a majority. One of the *Moss* dissenters in authoring today's majority opinion attempts to distinguish the two cases. The other *Moss* dissenter disavows the attempt. For my part, I concede an inability to fully comprehend the attempted distinction, leaving me unpersuaded that it was proper for the trial court in this case to draw inferences, but not so in *Moss.* As previously noted, if there is to be a change in the rule, I think it should come to us from the trial bar, the members of which are working under those rules on a daily basis.

The change in the rules announced today, as I understand it, is that the trial court on cross-motions for summary judgment may, when it believes no facts are in dispute, proceed to render a judgment just as though the parties had stipulated to a trial on the merits and submitted their case on a written record—which is something that certainly can be affirmatively done, and, in fact, has been done.[1]

I pause briefly to raise the additional proposition which I believe the majority should give further consideration and discussion, that this Court, on appeal from a district court decision entered on a cold record, is generally not bound by the lower court's findings of fact or conclusions of law.

While it is at once seen in this case that the landlord, with an action pending, could have easily notified the financially embarrassed and struggling lessee in writing that the paying of monies would not alter the course of the lawsuit, the landlord was justified in taking a quiet stand on paragraph 16 of Article 34 of the lease, which provides that the "Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this lease provided." This provision appears to be more damaging to the lessee's position than paragraph 1 of Article 34, which purports to require any waiver to be in a writing signed by the landlord. These two observations are made in accordance with the above principle that this Court can on a cold record draw its own inferences and conclusions. *Hearst Corp. v. Keller,* 100 Idaho 10, 592 P.2d 66 (1979); *Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974); *Thomas v. Stevens,* 78 Idaho 266, 300 P.2d 811 (1956); *Saccomano v. North Idaho Shingle Co.,* 73 Idaho 284, 252 P.2d 518 (1952).

Not at all comfortable in the manner in which this appeal is being decided, and seeing considerable merit in the view of Shepard, J., that under the rule as it has been the summary judgment was improper, without enthusiasm I concur in the result reached by the majority opinion.

---

1. I am reminded of a case in the first district in which the parties stipulated as to what they believed to be the facts, and both moved for summary judgment. The trial court denied both motions, declaring without specifying that there were facts in dispute. Whereupon the parties then stipulated that the case could be decided on the merits, neither offering any additional evidence or any additional stipulated facts. On that submission a decision was reached and judgment entered accordingly.

SHEPARD, Justice, dissenting:

I concur in much of the separate opinion of Bistline, J., regarding the adoption of a new rule by the majority here. Further I believe it more than passing strange that in an appeal from a summary judgment, the majority in affirming that summary judgment, continually refers to the findings of fact by the trial court. The record is unclear as to exactly how the trial court believed itself the finder of fact since originally appellant had moved for a jury trial.

In my judgment, the facts have been obfuscated, but they really are quite simple. The parties occupied the position of a lessor and a lessee. Their lease agreement contained provisions for lessee paying a set monthly rent together with other charges for taxes and repairs. The lease agreement further provided for an additional payment of rent based on a percentage of the gross sales. The relationship between the parties was without dispute as to payments by the lessee until the time of the Teton Dam disaster. Until that time, lessee made all payments claimed by lessor, although they were almost always delinquent in time. Notwithstanding those delinquencies, lessor accepted all payments and the relationship was amicable.

Following the Teton Dam disaster, however, the parties disagreed as to the amount of percentage rent due to lessor. Lessor made demands which lessee refused to honor. Based on lessee's failure to pay the demanded percentage rent, lessor made formal written demand therefor and ultimately brought the action to terminate the lease based on failure of the lessee to pay the demanded percentage rent.

By the time the matter was submitted to the trial court on the various motions for summary judgment, all disputes between the parties had been settled, and all monies due had been paid, save and except the alleged percentage rent. The trial court held that lessor was not entitled to the alleged percentage rent, thereby holding in favor of the lessee in the only then remaining area of dispute. Nevertheless, the trial court terminated lessee's lease.

In my judgment, the court below, and the majority here, reward the lessor for making a demand for monies to which the court ultimately decided the lessor was not entitled. Conversely, the court below, and the majority here, penalizes the lessee for his resistance of the lessor's unfounded charges by terminating the lessee's tenancy and forfeiting his interest which he had accumulated in the restaurant equipment. That result, I submit, stands both law and reason on their respective heads, and I, therefore, dissent.