989 P.2d 276

Charles B. DREW, Plaintiff–Respondent–
Cross Appellant,

v.

Rick A. SORENSEN, Defendant–
Appellant–Cross Respondent.

No. 99, 24631.

Supreme Court of Idaho,
Idaho Falls, May 1999 Term.

Aug. 30, 1999.

Rehearing Denied Dec. 2, 1999.

Luboviski, Wygle, Fallowfield & Williamson, Ketchum, for appellant. Ned C. Williamson argued.

Jordan P. Smith, Salmon, for respondent.

SILAK, Justice.

This is an appeal from an order granting summary judgment against appellant Rick A. Sorensen.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

Rick A. Sorensen (Sorensen) owns Lot 2 of the Ajax Peak Subdivision in Lemhi County. Respondent Charles B. Drew (Drew) owns the adjacent parcel designated as Lot 3. Sorensen's deed to Lot 2 states that he is entitled to "a 50 foot easement and right of way for ingress and egress for vehicular traffic from the county road across the north boundary of Lot No. 3 of said Ajax Peak Subdivision to the boundary of Lot No. 2 of said Ajax Peak Subdivision and the property here conveyed." Drew's warranty deed to Lot 3 states that the parcel is subject to the easement benefitting Lot 2. The easement was recorded in Lemhi County.

Sorensen has made Lot 2 his continual residence since purchasing the property in 1992. A one-lane dirt road runs along the easement and provides Sorensen with access to the county road. A post and rail fence ran

along the south edge of the road when Sorensen purchased the land. The fence was apparently built to settle a dispute over the easement between Drew and Michael and Kathleen Zanutto, Sorensen's predecessors in interest. In 1996, Ward Witte (Witte) leased Lot 3 from Drew, intending to graze his horses on the property for personal, noncommercial purposes. Such use was in conformity with a recorded covenant which states that no animals may be kept on the property, except for household pets, horses, and cattle, "provided they are not kept, bred, or maintained for any commercial purpose." In an affidavit, Witte stated that when he leased the property, he discovered that Sorensen was grazing his own horses on Lot 3, and Witte had to ask Sorensen to remove the animals so he could take possession.

In the spring of 1996, Sorensen surveyed and marked the boundaries of his easement. Later that year, Sorensen began moving the fence to the southern border of the easement. Sorensen quit relocating the fence around June 5, 1996, after Witte's employee sprayed 2–4–D, a broadleaf herbicide, within the easement. Sorensen refused to continue working on the fence because he was afraid of contamination from the "Agent Orange" he accused Witte of spraying. Drew sent a letter to Witte dated June 7, 1996, stating that Sorensen had no right to move the fence without Witte's permission. Sorensen sent Drew a letter on June 10, 1996, stating, "I told you we had problems that needed to be straightened out before you leased your property out (along with some of mine) to anyone else, for livestock grazing."

On June 15, Witte began completing the relocation of the fence. On that date, Sorensen confronted Witte, and said "at least five or six times" that he owned the easement, which was "private and exclusive to him." Witte told Drew of the confrontation, and Drew's counsel sent several letters to Sorensen, advising him that Drew would have to resort to litigation unless the conflict over the easement could be resolved amiably. Sorensen did not respond to any of the letters.

## B. Procedural Background

In December 1996, Drew filed a quiet title action in the district court, claiming that he was "entitled to the use and quiet enjoyment of the Road and that portion of Plaintiff's Lot No. 3 that is subject to the easement, so long as such use and quiet enjoyment does not interfere with the Defendant's right of ingress and egress for vehicular traffic to the boundary of Defendant's Lot No. 2." Drew asked the district court to "permanently enjoin the Defendant from interfering with or taking any actions inconsistent with or in derogation of" plaintiff's property rights. Neither party requested a jury trial.

In December 1997, both parties filed motions for summary judgment. On February 11, 1998, the district court issued a memorandum opinion and order granting summary judgment in favor of Drew. On March 4, 1998, the district court entered a judgment in Drew's favor. Sorensen subsequently filed a motion for reconsideration, and the court issued a second memorandum decision and order denying reconsideration on June 16, 1998. In the June 16 opinion, the court noted that the judgment entered on March 4 was overly broad.

The court entered an amended judgment that same day, which stated that Drew was "entitled to exercise all legal uses" of his property, including "weed control, grazing of livestock and access to the adjacent county road free of gates." The judgment also stated that Sorensen was permanently enjoined from interfering with Drew's legal uses of his property, except as permitted by Sorensen's easement for ingress and egress. The district court awarded costs to Drew, but declined to award attorney fees under section 12–121 of the Idaho Code.

## C. Order Being Appealed; Appealability

Sorensen filed a notice of appeal on April 15, 1998, requesting review of the district court's February 11 Memorandum Decision and Order and the judgment entered on March 4. The judgment is a final judgment appealable under Idaho Appellate Rule 11(a). Under I.A.R. 17(e)(C), the notice of appeal is deemed to include and present on appeal "all interlocutory or final judgments, orders and decrees entered after the judgment, order or decree appealed from." Sorensen also filed an amended notice of appeal that included the amended judgment. Therefore, this ap-

peal is deemed to also include the judgment entered on June 16, 1998.

## II.

### ISSUES ON APPEAL

The issues presented on appeal are as follows:

1. Whether the district court erred by granting Drew's request for summary judgment by relying on actions of Sorensen which either constitute the legal exercise of secondary easements or present a genuine issue of material fact.

2. Whether the district court erred in deciding the motions for summary judgment based on a prescriptive easement claim which was not raised by the pleadings.

3. Whether the district court erred in entering a judgment which is overly broad, is inconsistent with the court's memorandum decision and order, and addresses issues not raised in the pleadings.

4. Whether this Court should award Sorensen attorney fees and costs pursuant to I.C. § 12–121 and I.A.R. 41.

5. On cross appeal, whether the district court erred in not awarding attorney fees to Drew under I.C. § 12–121.

6. Whether Drew is entitled to attorney fees on appeal pursuant to I.C. § 12–121, I.R.C.P. 54(e)(1), and I.A.R. 41.

## III.

### STANDARD OF REVIEW

■ In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *See, e.g., First Security Bank v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998); *Richards v. Idaho State Tax Comm'n,* 131 Idaho 476, 478, 959 P.2d 457, 459 (1998). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Murphy,* 131 Idaho at 790, 964 P.2d at 657.

■ Generally, when considering a motion for summary judgment, a court "liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor." *Brooks v. Logan,* 130 Idaho 574, 576, 944 P.2d 709, 711 (1997). However, where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, "summary judgement is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). As long as the parties have filed cross-motions for summary judgment and no jury has been requested, the trial court may draw the inferences it would be allowed to draw from the evidence at trial. *See Williams v. Computer Resources, Inc.,* 123 Idaho 671, 673, 851 P.2d 967, 969 (1993). When "the opposing motions seek summary judgment based upon different issues or theories dependent on a different set of material facts" the court "must examine each motion separately, reviewing the record and the reasonable inferences that can be drawn from it in favor of each party's opposition to the motions for summary judgment." *Murphy,* 131 Idaho at 790, 964 P.2d at 657. Since Sorensen did not appeal the denial of his motion for summary judgment, this Court needs only to examine whether the district court properly granted Drew's motion for summary judgment.

## IV.

### ANALYSIS

A. **The District Court Did Not Err In Granting Summary Judgment Against Sorensen.**

1. **The district court did not err by granting summary judgment by relying on factors which either constitute the legal exercise of secondary easements or present a genuine issue of disputed material fact.**

The district court did not err by granting summary judgment in favor of Drew. The

district court reasonably inferred that Sorensen "ha[d] been claiming 'private and exclusive' dominion over the easement" based on three of Sorensen's actions: the relocation of the fence, the installation of a gate and a "No Trespassing" sign, and certain statements Sorensen made about the easement. Sorensen argues that the relocation of the fence and placement of the gate is the rightful exercise of a "secondary easement," which allows the dominant landowner to enter the servient estate in order to maintain, repair, or protect the easement. Sorensen also argues that one of the factors used by the district court presented a genuine issue of material fact that should have precluded summary judgment.

### a. Sorensen's actions in moving the fence and installing the gate exceeded the limitations imposed upon the exercise of secondary easements.

■ While Idaho law recognizes the existence of secondary easements, Sorensen's actions exceeded the limits placed upon the exercise of such easements. These easements "include the right to repair and maintain the primary easement and cannot be used to enlarge the burden to the servient estate. Such easements are to be 'exercised only when necessary and in such a reasonable manner as not to increase needlessly the burden on ... the servient estate.'" *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 549–50, 808 P.2d 1289, 1294–95 (1991) (quoting 25 AM.JUR.2D EASEMENTS AND LICENSES § 86 (1966)).

Sorensen's actions exceed the limitations upon the use of secondary easements. First, placement of the fence at the width of the entire easement hinders Drew's enjoyment of a significant area of his property. Fencing off approximately 38,500 square feet constitutes an unreasonable burden on the servient estate. Second, Sorensen has not shown that his actions were "reasonable" and "necessary." *Abbott*, 119 Idaho at 549–50, 808 P.2d at 1294–95. Sorensen has not shown why relocation of the fence was necessary to maintain or repair his easement, which is to be used only for ingress and egress.

Sorensen also argues that dominant landowners have a duty to protect their easement, and that relocating the fence was necessary to protect his easement across Drew's property. Sorensen cites *City of Bellevue v. Daly*, 14 Idaho 545, 94 P. 1036 (1908), in support of this argument. In *City of Bellevue*, the city provided drinking water to its residents through a ditch along an easement that traversed a parcel where Daly grazed cattle. The cattle polluted the city's drinking water, and the city filed a nuisance action against Daly. The Court held that the financial burden to fence and protect the ditch fell on the dominant landowner.

■ The duty to protect the easement discussed in *City of Bellevue* does not give the dominant landowner an unqualified right to fence off the easement, however. Concerning the holding in *City of Bellevue*, this Court has stated:

> This duty requires that the easement owner maintain the easement so as not to create an additional burden on the servient estate. In *City of Bellevue*, this Court held that it was the obligation of the easement owner to fence and protect the easement. The Court reasoned that the owner of the land subject to the easement should not be deprived of the use of his land as pasturage because of the existence of the easement.

*Gibbens v. Weisshaupt*, 98 Idaho 633, 640, 570 P.2d 870, 877 (1977). *Gibbens* indicates that the duty to protect an easement exists to prevent additional burdens to the servient landowner. Sorensen has not shown that fencing off the entire width of the easement is necessary to protect the easement. Sorensen asks this Court to transform the duty to protect the easement into an unqualified right to fence off the entire width of the easement for his own benefit and convenience. Under these circumstances, Sorensen's relocation of the fence cannot be characterized as the exercise of a secondary easement.

Sorensen compares this case to *Boydstun Beach Ass'n v. Allen*, in which the Idaho Court of Appeals approved the placement of a fence along an easement, stating that "limiting access to the easement to those with

use rights is sensible and benefits both parties." 111 Idaho 370, 378, 723 P.2d 914, 922 (1986). *Boydstun Beach* is so factually different from the current case that it is of little instructive value here. In *Boydstun,* the easement provided access to a beach for members of the Boydstun Beach Association. The servient landowner installed a sprinkler system and landscaping that interfered with the use of the easement.

The trial court in *Boydstun* formulated a plan intended to regulate the use of the easement which included fencing off the easement. The fence was intended to limit beach access only to those who had ownership interest in the easement. Presumably, the fence would keep free-riders from using the beach and keep beach users from completely overrunning the servient landowner's property. Here, Sorensen argues that "[s]imilarly, [he] was protecting his easement rights with a simple demarcation of the fifty foot easement, which in turn protected [him] from any loss of the fifty-foot easement." Sorensen fails, however, to specify anything that poses an actual threat to his easement. Neither does fencing off the easement benefit Drew in any significant way. If anything, the fence interferes with the full enjoyment of his property. Therefore, *Boydstun Beach* does not support the relocation of the fence in the instant case.

Sorensen also cites *Kolouch v. Kramer,* 120 Idaho 65, 813 P.2d 876 (1991), in support of the argument that "the question of whether a particular use of an easement is reasonable and commensurate with the intention of the parties when the easement was created is generally a question of fact." Since questions of fact should not be resolved in a motion for summary judgment, Sorensen argues, the district court erred in granting summary judgment. This argument is unpersuasive, since the trial court, which would ultimately have been the finder of fact, was allowed to draw reasonable inferences from the undisputed facts in granting summary judgment. *See Williams,* 123 Idaho at 673, 851 P.2d at 969. It is undisputed that the parties who originally created the easement intended to provide access to Lot 2 by granting a right of way along the edge of Lot 3.

Since the intended purpose of the easement is uncontroverted, the district court was free to draw reasonable inferences about the reasonableness of Sorensen's actions. Accordingly, the district court ruled that Sorensen's actions were inconsistent with the purpose of the easement as granted and recorded.

■ Sorensen also argues that building a gate across the easement and posting a "No Trespassing" sign were also a permissible exercise of a secondary easement. Sorensen argues that the gate and sign were intended to protect the status of the road as a private road because he was concerned that someone might claim the easement was a public road. Sorensen argues that the fence and sign were a permissible attempt to preclude such claims, and cites *Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977), in support of this argument.

*Gibbens* does not support this argument. In *Gibbens,* the dominant landowners acquired a prescriptive easement across land the servient owner used for grazing. The Court in *Gibbens* stated that gates installed across easements are not prohibited *per se,* but cannot interfere with the use of the roadway by the owners of the dominant estate. *See id.* at 640, 570 P.2d at 877. The Court also stated that it was the duty of the dominant landowners to install any necessary gates and fences. *Id.* The gates and fences in *Gibbens* were not intended to prevent the general public from using the road, but rather to control cattle. Furthermore, the gates and fences were not intended to protect the easement, but rather to protect the servient landowner's interest in running cattle on his land. *Id. Gibbens* simply does not set forth any legal principle that supports Sorensen's supposed right to regulate the use of the easement. Even if *Gibbens* did express such a doctrine, Sorensen has not shown any facts that suggest that the easement is in danger of becoming a public road in the near future.

■ Sorensen contends that in cases where the servient owner complains of a gate installed by the dominant owner, the appellate courts "seem to analyze those claims as secondary easements by reviewing the right and duty of the dominant estate holder to maintain, repair and protect an easement."

While Sorensen cites no cases in support of this statement, he concedes that Idaho courts have recognized the servient owner's right to use gates to regulate traffic on the easement. "There is nothing in this Court's case law that prohibits a servient estate holder from limiting use of the easement to authorized users." *Marshall v. Blair*, 130 Idaho 675, 682, 946 P.2d 975, 982 (1997). This Court has also concluded that a *servient* estate holder is entitled to make "reasonable regulations" concerning the use of the easement. *Id.* No parallel right for dominant estate holders has been recognized by this Court.

In Idaho, "an easement is the right to use the land of another for a *specific* purpose that is not inconsistent with the general use of the property by the owner." *Abbott*, 119 Idaho at 548, 808 P.2d at 1293 (emphasis added); *see also Carson v. Elliott*, 111 Idaho 889, 890, 728 P.2d 778, 779 (1986) (summarizing the rights of landowners concerning easements). As long as Sorensen is able to use the easement for access to his land for the specific purpose for which the easement was granted, without unreasonable interference, he has received everything to which he is legally entitled. Therefore, we hold that the district court did not err in ruling that Sorensen's actions exceeded those legally guaranteed rights and in granting summary judgment in Drew's favor.

### b. The factors relied on by the district court do not present disputed material facts.

Sorensen also contends that there were disputed material facts in the case, and that the district court impermissibly weighed the evidence in making its decision. This argument is not persuasive. Sorensen points to the affidavit of Stephanison, the sheriff's deputy who was present during the confrontation between Witte and Sorensen that occurred on June 15, 1996. After the district court granted summary judgment to Drew, Sorensen submitted this affidavit in support of a motion to reconsider. The district court denied the motion, ruling that Sorensen could have secured the affidavit earlier in the proceedings and failed to do so. The affidavit was not admitted into evidence, and the

district court granted Drew's motion to strike the affidavit from the record. Sorensen has not appealed the district court's decision to strike the affidavit.

The only evidence describing the confrontation that was properly before the court was the affidavit of Drew's tenant Ward Witte. Witte testified that during the confrontation, Sorensen said "at least five or six times" that the easements were "private and exclusive" to him. The court also considered a letter Sorensen wrote to Drew in which he stated: "I told you that we had problems that needed to be straightened out before you leased your property out (*along with some of mine*) to anyone else, for cattle grazing ." (Emphasis added.)

Sorensen failed to rebut this evidence before summary judgment was granted. Accordingly, the district court ruled that the evidence indicated that Sorensen "was claiming 'private and exclusive' dominion over the easement which could give rise to an easement by prescription." Since the recorded easement conveyed only non-exclusive use to Sorensen, the district court ruled that Drew was entitled to have title quieted in his name under section 6–401 of the Idaho Code. The district court arrived at this conclusion drawing reasonable inferences from the undisputed evidence that would have been presented at trial. *See Williams,* 123 Idaho at 673, 851 P.2d at 969.

Based on Sorensen's relocation of the fence, installation of the gate and "No Trespassing" sign, and his statements made to Ward Witte, we hold that the district court did not err in concluding that Sorensen intended to exert private and exclusive dominion over the easement.

### 2. The district court erred in deciding the motions for summary judgment based on a prescriptive easement theory.

The district court ruled that Sorensen's actions were "sufficient for the Court to draw the reasonable inference that [Sorensen] has been claiming 'private and exclusive' dominion over the easement which could give rise to an easement by prescription." Sorensen

argues that the pleadings did not raise the issue of easements by prescription, and that the district court erred in applying this theory in granting Drew's motion for summary judgment.

Drew's failure to raise the issue of prescriptive easements in his complaint does not necessarily preclude the district court's application of the prescriptive easement doctrine. This Court has held that in quiet title actions, the plaintiff "asserts his own estate and declares generally that the defendant claims some estate in the land, without defining it, and avers that the claim is without foundation, and calls on the defendant to set forth the nature of his claim, so that it may be determined by decree." *Dickerson v. Brewster*, 88 Idaho 330, 336, 399 P.2d 407, 410 (1965) (quoting BLACK'S LAW DICTIONARY 51 (4th ed.1951)). The Idaho Court of Appeals has also held that "a complaint to quiet title is sufficient if it alleges, in ordinary and concise terms, that the plaintiff is the owner of the disputed property, without setting forth the probative facts by which that ultimate fact is to be established." *Aldape v. Akins*, 105 Idaho 254, 260, 668 P.2d 130, 136 (Ct.App.1983). The district court in a quiet title action must then determine the ownership rights of the parties based on the facts involved. In making this determination, the district court should examine the facts by applying relevant legal principles and theories that define the property rights of the parties. In this case, the district court ruled that Sorensen's actions were "sufficient to draw the reasonable inference that he has been claiming 'private and exclusive' dominion over the easement which could give rise to an easement by prescription."

■■■■■ An easement by prescription is established when a claimant presents "reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years." *Marshall v. Blair*, 130 Idaho at 680, 946 P.2d at 980 (1997). "Under a claim of right" means that the claimant has used the property without recognition of the rights of the servient landowner. *See id.* The extent to which the easement may be legally used may also be prescriptively enlarged. *See Villager Condominium Assoc. v. Idaho Power Co.*, 121 Idaho 986, 988, 829 P.2d 1335, 1337 (1992); *Merrill v. Penrod*, 109 Idaho 46, 52, 704 P.2d 950, 956 (Ct.App.1985).

■■■■■ The district court seems to have concluded that Sorensen's actions, if left unchecked, would eventually ripen into an expanded or enlarged prescriptive easement. The easement would be expanded in the sense that instead of the nonexclusive easement for ingress and egress Sorensen now owns, he would have a private and exclusive easement from which he could exclude others, presumably even Drew. In that event, Sorensen's interest in the north 50 feet of Lot 3 could no longer be characterized as an easement, because that sort of easement does not exist. A servient landowner may always use the land burdened by the easement, so long as he or she does not interfere with the dominant owner's full enjoyment of the easement. *See Carson*, 111 Idaho at 890, 728 P.2d at 779. Therefore, the district court erred in applying the prescriptive easement theory.

■■■■■ While the district court's application of the prescriptive easement theory was erroneous, the district court correctly ruled that Sorensen's actions constituted an adverse claim to the north 50 feet of Drew's property. Section 6–401 of the Idaho Code, which provides a cause of action for quieting title, states: "An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." The statute does not require the district court to specifically identify the type of interest being claimed. As long as Sorensen's actions amount to a claim adverse to Drew's interest in the property, Drew is entitled to a decree quieting title in his name. The district court determined that Sorensen was making an adverse claim to the north fifty feet of Drew's property. We find no error in the district court's conclusion.

### 3. The district court's judgment is overly broad.

Sorensen argues that the district court's judgment is overly broad, inconsistent with the district court's memorandum decisions, and addresses issues not raised in the pleadings. Sorensen finds error in three of the judgment's provisions. We address each of the contested provisions in turn.

First, the judgment entered by the district court stated that Drew was entitled "to exercise all legal uses of said property, subject to, and not injurious to, a non-exclusive easement owned by Defendant RICK A. SORENSEN, to use the north 50 feet of said Lot 3 of Ajax Peak Subdivision *only* for vehicular ingress and egress." (Emphasis added.) Sorensen argues that this provision is erroneous because it restricts his legal right to use the easement for "uses which are incidental or necessary to the reasonable and proper enjoyment of the easement."

Sorensen made this same argument in support of a motion for reconsideration of the district court's judgment. The district court, while denying the motion to reconsider, agreed that the original judgment was overly broad in this respect. The court recognized that "certain unenumerated, limited uses of the easement such as snow removal may be necessarily implicated by Sorensen's use of the easement for vehicular ingress and egress." The district court entered an amended judgment that omitted the word "only." Since the amended judgment is part of this appeal, Sorensen's objection to this provision is moot because it has already been resolved in his favor.

Second, the judgment also permanently enjoined Sorensen "from *disputing*, interfering with or taking any action inconsistent with or in derogation of" Drew's legal uses of Lot 3. (Emphasis added.) Sorensen contends that the injunction is overly broad because it prohibits Sorensen from disputing what constitutes Drew's "legal uses" of Lot 3 in the future. The district court recognized that the injunctive portion of the judgment was overly broad, and that "Sorensen should not be deprived of his right of access to the courts to raise legitimate challenges to uses of the easement which have not been raised by the parties." Accordingly, the court omitted the word "disputing" in its amended judgment. Since the amended judgment is part of this appeal, Sorensen's objection to this provision is also moot.

Sorensen also argues that the injunctive portion of the judgment transforms this case into a quiet title action involving all of Lot 3, not just the portion burdened by the easement. This argument is without merit. The amended judgment states that Sorensen is permanently enjoined from "taking any action inconsistent with or in derogation of [Drew's] legal uses of Lot 3 ... except as permitted by the above-described non-exclusive easement." The injunction is clearly limited to the portion of Lot 3 that is encumbered by the easement.

Finally, the judgment also stated that Drew's right to use Lot 3 included, but was not limited to, "weed control, grazing of livestock and access to the adjacent county road free of gates." Sorensen argues that the legal uses of Lot 3 were not raised in the pleadings and that the district court erred in creating a short list of legal uses. Sorensen also argues that the enumerated uses "clearly alter the parties' rights under their respective property deeds," and "may infringe on [Sorensen's] right to enjoyment of the easement."

While we disagree with Sorensen's contention that the amended judgment entered by the district court somehow altered or infringed upon his property rights under the easement, we believe that the district court erred in creating a list of Lot 3's "legal uses." As an owner of property burdened by an easement, Drew is entitled to use his property in any manner he sees fit as long as it does not interfere with Sorensen's easement for ingress and egress. *See Carson*, 111 Idaho at 890, 728 P.2d at 779 (summarizing the rights of landowners concerning easements). As the case was presented to the court on cross-motions for summary judgment, there was no authority for the court to create a list of legal uses, and therefore the district court erred in doing so.

**4. Sorensen is not entitled to attorney fees.**

Sorensen argues that he is entitled to attorney fees on appeal under section 12–121 of the Idaho Code. Attorney fees under this section may be awarded to the prevailing party only when the court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. *See* I.R.C.P. 54(e)(1); I.C. § 12–121. Since each party prevailed in part on appeal, neither party is awarded attorneys fees on appeal.

**B. The District Court Did Not Err In Declining To Award Attorney Fees To Drew.**

■ The district court declined to award attorney fees to Drew under I.C. § 12–121, stating that "although Sorensen's defense was nonmeritorious, the Court does not find that it was pursued frivolously as required for recovery of attorney's fees under I.C. § 12–121." This Court has held that an award of attorney fees under I .C. § 12–121 is not a matter of right, and is appropriate only when the court, in its discretion, "is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Owner–Operator Ind. Drivers Assoc. v. Idaho Public Util. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994); *see also* I.R.C.P. 54(e)(1). The court's decision to award attorney fees is subject to reversal if the district court abused its discretion. *See Savage Lateral Ditch Water Users Assoc. v. Pulley*, 125 Idaho 237, 250, 869 P.2d 554, 567 (1993). In *Pulley* we outlined a three part test for the exercise of discretion:

> When the exercise of discretion is involved, an appellate court conducts a three-step analysis: (1) whether the trial court properly perceived the issue as one of discretion; (2) whether that court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by the exercise of reason.

*Id.*

Here, the district court expressly recognized in its second memorandum decision that an award of attorney fees was committed to its discretion. The court noted that while it believed Sorensen's defense was "nonmeritorious," it did not find that it rose to the level of frivolity. Drew presents no evidence that the district court's decision was not reached by the exercise of reason. Therefore, the district court did not err in declining to award attorney fees at trial. For the same reason, Drew's request for attorney fees on appeal is denied.

## V.

### CONCLUSION

Although summary judgment was properly granted against appellant Sorensen, we hold that the judgment as entered was overly broad. Therefore, we vacate the district court's judgment and remand for modification consistent with this opinion. Neither appellant nor respondent is entitled to attorney fees under I.C. § 12–121, I.R.C.P. Rule 54(e)(1), or I.A.R. Rule 41 at trial or on appeal. Because of the mixed result, no costs are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and KIDWELL, concur.