964 P.2d 654

FIRST SECURITY BANK OF IDAHO, N.A., as trustee of the David Johnson Trusts; Dorothy Johnson; Connie Johnson; Sherry Johnson; and Mike Johnson, Plaintiffs–Appellants,

v.

Donald MURPHY, Defendant–Respondent.

No. 23485.

Supreme Court of Idaho.

Aug. 24, 1998.

Rehearing Denied Oct. 13, 1998.

White, Peterson, Pruss, Morrow & Gigray, P.A., Nampa; Todd A. Rossman and Eric S. Rossman, for Plaintiffs–Appellants. Eric S. Rossman argued.

Alexanderson, Davis, Rainey & Whitney, Caldwell; David L. Whitney, for Defendant–Respondent. David L. Whitney argued.

WALTERS, Justice.

This is an appeal from the district court's award of summary judgment in favor of the defendant shareholder and general manager of Ace Supply, Inc., arising out of the interpretation of a shareholders' agreement providing for a corporate buy-back of stock upon the death of a shareholder of the closely held corporation. We vacate the order granting summary judgment to the defendant and remand the case for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In 1969, the three shareholders of Ace Supply, Inc., drew up an agreement to restrict the sale of the corporation's stock to third parties and, upon the death of a shareholder, to insure the transfer of stock into compatible hands and to provide a market for the widow's share of any community stock. The agreement contemplated that the corporation would purchase the stock in the event of a death and that the purchase would be funded by proceeds of an insurance policy on the life of the shareholder. In 1975, the shareholders' agreement was amended to provide that the buy-back of a deceased shareholder's stock would be limited by the extent of the life insurance proceeds and that any remaining shares owned by the decedent would be purchased by the surviving shareholders who were signatories to the agreement. The amendment further restricted the right of the corporation to borrow against any cash surrender values of the life insurance policies maintained on any of the parties to the agreement, except under specific conditions.

The signatories to the 1975 shareholders' agreement were Delwin G. Woerman, David G. Johnson and Donald Murphy. When Woerman died sometime in the mid-1970's, the corporation purchased his shares of stock and those held in an authorized trust he had created for his family members. Of the shares held in trust, 516 were purchased by Johnson and his wife, Dorothy. At the time, Johnson also owned 1,425 shares as his separate property.

As evidenced by Certificate No. 46 which was dated September 30, 1981, David Johnson's separate property shares (1,425 less 20 shares conveyed to Mike Johnson, or 1,405 shares) were transferred to David Johnson and Dorothy Johnson, husband and wife. From that time, all of the Ace Supply, Inc., stock owned by David and Dorothy Johnson,

1,901 shares, was held as community property.

In 1984, David Johnson, a majority shareholder of the corporation, died unexpectedly. As a result of his death, Ace Supply Inc., was called upon, pursuant to the shareholders agreement, "to purchase as much of the stock of the deceased stockholder as can be purchased by death benefit proceeds from life insurance held by the corporation upon the life of such deceased stockholder, to the extent permitted by law." The corporation applied the life insurance proceeds to purchase David Johnson's stock in accordance with the shareholders' agreement. The payoff value of the insurance, which was reduced by the amount of outstanding loans against the life insurance policy, however, was insufficient to purchase all of the stock owned by David Johnson. A total of 1,636 shares were purchased, and there remained 265 shares, which when assessed at the agreed-upon value of $1,158 per share, created a deficiency of $306,000 owing to David Johnson's estate.

Seeking payment of the deficiency, the estate of David Johnson filed a creditor's claim in the Chapter XI bankruptcy proceedings begun by Ace Supply, Inc., in 1986. Under section 3 of the confirmed bankruptcy plan, the claim of the estate of David G. Johnson under the shareholders' agreement, as one of the Class 12 claims, was to be paid fifty percent (50%) on the fifth anniversary of the plan and fifty percent (50%) on the sixth anniversary of the plan. After the failure of the corporation to make the March 1995 payment, Dorothy Johnson, the children of David Johnson's first marriage, and First Security Bank of Idaho as Trustee of the David Johnson Trusts brought suit against Donald Murphy, alleging breach of the provision of the shareholders' agreement requiring the purchase of "the stock of the deceased shareholder." [1]

Murphy answered the plaintiffs' complaint and denied any obligation under the shareholders' agreement to purchase the remain-

---

**1.** On January 15, 1988, Murphy signed a "Waiver of Statute of Limitations in Consideration of Postponement of Suit," waiving a statute of limitations defense to any action brought by the plaintiffs to enforce the provisions of the shareholders' agreement, as amended, in the event of failure of the corporation's Chapter XI plan or conversion to a Chapter VII. Ace Supply, Inc., defaulted on its bankruptcy plan when it failed to make the scheduled March 1995 payment of the estate's claim.

ing shares, asserting various affirmative defenses. First, Murphy alleged that Dorothy Johnson's shares were not subject to the buy-back agreement. Murphy also alleged that David Johnson had breached the agreement by unilaterally taking loans against the life insurance policies in violation of the shareholders' agreement, thereby discharging any duty on Murphy's part to purchase the decedent's shares following the incomplete stock buy-back upon David Johnson's death.

The parties filed cross-motions for summary judgment. Following a hearing on the motions, the district court found that David Johnson's separate and community property shares were subject to the agreement. As to Dorothy Johnson's community property shares, however, the district court found that they were not bound by the shareholders' agreement because of a lack of mutuality between Dorothy Johnson and Murphy. The district court also found that, by borrowing against the insurance policies, David Johnson had breached the shareholders' agreement, that the breach was material and that it could properly be raised by Murphy as a defense to the plaintiffs' breach of contract claim. Concluding that David Johnson's breach excused performance under the agreement by Murphy, the district court entered summary judgment in Murphy's favor and subsequently awarded fees and costs to Murphy under I.R.C.P. 54(e) and I.C. § 12–120(3). The plaintiffs filed a timely appeal contesting the district court's summary judgment order and the award of fees.

## STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on a motion for summary judgment. *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 887 P.2d 1034 (1994); *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Thomson*, 126 Idaho at 529, 887 P.2d at 1036.

We have held that the filing of cross-motions for summary judgment by opposing parties does not in itself establish that there is no genuine issue of material fact. *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979); *Farmer's Ins. Co. v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976). This is particularly so when the opposing motions seek summary judgment based upon different issues or theories dependent on a different set of material facts. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519 n. 1, 650 P.2d 657, 661 n. 1 (1982). Where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences. *Id.* at 519, 650 P.2d at 661. In order to determine whether either party is entitled to summary judgment, this Court must examine each motion separately, reviewing the record and the reasonable inferences that can be drawn from it in favor of each party's opposition to the motions for summary judgment. *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995).

## ANALYSIS

The appellants argue that the district court erred in awarding summary judgment to Murphy. They dispute the district court's conclusion that Dorothy Johnson's community property shares of stock were not subject to the shareholders' agreement, challenging the court's finding of lack of mutuality of obligation. The appellants rely on I.C. § 32–912 and contend that David Johnson's signature on the 1975 amendment to the shareholders' agreement was sufficient to bind Dorothy Johnson's community property shares, thus putting her shares within the buy-back provisions of the shareholders' agreement and obligating Murphy to purchase her shares upon David Johnson's death. The appellants argue that their position is consistent with the expressly stated

purpose of the agreement, as amended, that "all of the capital stock of the corporation be owned by persons interested and compatible with the business of the Corporation."

The issue before the district court at the hearing on the motions for summary judgment centered on whether Dorothy Johnson's community property shares were considered part of "the stock of the deceased stockholder." Pursuant to the agreement, "the stock of the deceased stockholder" was to be purchased initially by the corporation with death benefit proceeds from life insurance and then by the surviving signatories to the agreement, in this case, Murphy. Addressing this issue, the district court ruled:

It seems clear, as a matter of law, that in using the phrase "stock of the deceased stockholder" the parties meant to include all stock that could be encumbered by the stockholder's signature at the time of the execution of the agreement. The parties meant to include all of the stock of each of the parties to the agreement whether it was community, separate or a mixture of community and separate.

 We freely review the question of whether the shareholders' agreement is ambiguous. *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). If the provisions of an agreement are reasonably susceptible to conflicting interpretations, then the agreement is ambiguous. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414 (1995); *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). Interpretation of an ambiguous contract is a question of fact. *City of Chubbuck*, 127 Idaho at 201, 899 P.2d at 414. However, where contract terms are clear and unambiguous, the interpretation of the contract's meaning is a question of law. *Id.*

 In interpreting any provision of a contract, the entire agreement must be viewed as a whole to ascertain the mutual intent of the parties at the time their contract was made. *St. Clair v. Krueger*, 115 Idaho 702, 705, 769 P.2d 579, 582 (1989). Where the parties' intention is clear from the language of their contract, its interpretation and legal effect are to be resolved by the court as a matter of law. *Luzar v. Western Surety Co.*, 107 Idaho 693, 697, 692 P.2d 337, 341 (1984). Where the parties' mutual intent cannot be understood from the language used, intent becomes a question for the trier of fact, to be ascertained in light of the extrinsic evidence. *Id.*

 We find no ambiguity in the phrase "stock of the deceased stockholder." Upon David Johnson's death, therefore, all of his stock, including separate and community property stock, was to be purchased by the corporation and otherwise bound by the transfer restrictions set forth in the agreement.

Although the district court interpreted the agreement to include all stock that could be encumbered by David Johnson's signature at the time of the execution of the agreement, the district court then concluded that, because Dorothy Johnson had not signed the agreement committing to restrict her ability to transfer the stock, her community property shares were not subject to the buyback provisions upon David Johnson's death. The district court, citing I.C. § 30–415, also held there was no mutuality of obligation because the lack of notice on the stock certificates precluded Dorothy from being bound by the sale restrictions.

 If it appears that one party was never bound on its part to do the acts which form the consideration for the promise of the other, there is a lack of mutuality of obligation and the other party is not bound. *McCandless v. Schick*, 85 Idaho 509, 518, 380 P.2d 893, 897–898 (1963), *citing Houser v. Hobart*, 22 Idaho 735, 127 P. 997 (1912). *See generally* 17A AM. JUR.2D, Contracts § 18 (1991). However, the district court did not properly consider the effect of community property law in the circumstances of an agreement signed by one spouse with regard to the corporate stock owned by the community. Under community property law, either the husband or the wife may bind the community property, other than real property, by contract; and either shall have the right to manage and control the community property. *See* I.C. § 32–912. *See also Waters v. Double L, Inc.*, 114 Idaho 256, 264 n. 6, 755

**792**

P.2d 1294, 1302 n. 6 (Ct.App.1987)(urging that the representations of one spouse regarding the exercise of shareholders' rights should be binding on the other spouse); *Rogers Walla Walla, Inc. v. Ballard,* 16 Wash. App. 81, 553 P.2d 1372, 1375–76 (Wa.App.1976)(under community property system, husband and wife held obligated based upon husband's signature on contract agreeing to resell his shares upon leaving employment). Once the community was established in 1974, David Johnson's signature on the 1975 amendment to the shareholders' agreement operated to bind the shares of stock acquired by the community or transmuted from separate into community property. We conclude that Dorothy Johnson's shares were entirely subject to the provisions of the shareholders' agreement and on this basis, we set aside the district court's finding of lack of mutuality.

In reviewing whether the district court erred in granting Murphy's motion for summary judgment, this Court must determine that Murphy established his defense as matter of law. The appellants argue that it was error for the district court to relieve Murphy of his obligation under the buy-back provisions of the shareholders' agreement, after concluding that the loans obtained by David Johnson against the insurance policies constituted a material breach. They argue that the loans were not in violation of the agreement in that they met a corporate need and were approved by Murphy. They contend that even with the outstanding loans, the objective of the agreement was substantially accomplished. Lastly, they argue that set off, not a rescission of the agreement, is the proper remedy.

■ Rescission of a contract is available only when one of the parties has committed a material breach which destroys the entire object of entering into the contract and which touches the fundamental purpose of the contract. *Ervin Construction Co. v. Van Orden,* 125 Idaho 695, 699–700, 874 P.2d 506, 510–11 (1993). Rescission is not available, however, where the breach of contract is only incidental and subordinate to the main purpose of the contract. *Id.* A breach of contract is not material if substantial perfor-

mance has been rendered. *Mountain Restaurant Corp. v. ParkCenter Mall,* 122 Idaho 261, 265, 833 P.2d 119, 123 (Ct.App.1992). Substantial performance is performance which, despite a deviation from contract requirements, provides the important and essential benefits of the contract to the promisee. *Id.* Whether a breach of contract is material is a question of fact. *Id.*

■ Thus, Murphy raised a genuine issue of material fact, pursuant to his asserted defense, that could not be resolved on summary judgment. Although it is undisputed that less than all of the shares of stock owned by David and Dorothy Johnson were purchased upon David Johnson's death with the insurance proceeds, it was for the fact finder to decide to what extent the loans against the insurance policies impaired the purpose of the shareholders' agreement. Presented with evidence that the loans taken by David Johnson provided financing to the corporation at interest rates ten percent lower than the prevailing commercial rates, the district court found that the loans failed to meet "a specific and definite corporate need." From the evidence of Donald Murphy's signature on the insurance loans, the district court ruled the evidence of Murphy's signature on the loan documents to be inconclusive because of Murphy's sworn testimony that he had no prior knowledge of the loans.

It appears that the district court proceeded to make a credibility determination and weighed the evidence presented on the summary judgment motions. The district court's approach was not appropriate under *Dunlap ex rel. Dunlap v. Garner,* 127 Idaho 599, 605, 903 P.2d 1296, 1302 (1995).

Viewing the evidence in a light most favorable to the plaintiffs, as we must on Murphy's motion for summary judgment, we conclude that reasonable minds could differ as to whether the loans obtained by David Johnson were authorized as a "specific or definite corporate need" and whether objective evidence of Murphy's signature on the loans support the application of waiver, estoppel, ratification or any other equitable ground that would prevent Murphy from raising the breach as a defense. *See Moss v. Mid-American Fire & Marine Ins. Co.,* 103 Idaho

298, 647 P.2d 754 (1982); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion for summary judgment must be denied. *Friel v. Boise City Housing Authority*, 126 Idaho 484, 887 P.2d 29 (1994). Therefore, because of the existence of material factual issues that were not subject to resolution as a matter of law on summary judgment, we conclude that the district court erred in granting Murphy's motion for summary judgment.

## CONCLUSION

We vacate the district court's award of summary judgment and remand for trial of the remaining factual issues. Because the district court erred in granting summary judgment to Murphy, we also set aside the award of attorney fees to Murphy.

Costs to appellants. No fees are awarded on appeal.

TROUT, C.J., SILAK and SCHROEDER, JJ., and HART, J. Pro Tem., concur.