996 P.2d 798

SELKIRK SEED COMPANY, an Idaho corporation, individually, and on behalf of other private, non-governmental/nonpublic insureds of the State Insurance Fund with complaints filed against them for benefits before the State of Idaho Industrial Commission, Petitioner–Cross Appellant,

v.

Drew S. FORNEY, in his capacity as Manager of the State Insurance Fund; State Insurance Fund; Max M. Sheils, Jr., individually and as a special deputy attorney general; and Julie Cooper, in her capacity as Claims Bureau Chief for the State Insurance Fund, Respondents,

and

Alan G. Lance, Idaho State Attorney General, Respondent–Cross Respondent.

Selkirk Seed Company, an Idaho corporation, individually, and on behalf of other private, non-governmental/nonpublic insureds of the State Insurance Fund with complaints filed against them for benefits before the State of Idaho Industrial Commission, Petitioner–Appellant,

v.

Drew S. Forney, in his capacity as Manager of the State Insurance Fund and State Insurance Fund, Respondents–Respondents on Appeal,

and

Alan G. Lance, Idaho State Attorney General; Max M. Sheils, Jr., individually, and as a special deputy attorney general; and Julie Cooper, in her capacity as Claims Bureau Chief for the State Insurance Fund, Respondents.

Nos. 24271, 24292.

Supreme Court of Idaho, Coeur D'Alene, 1999 Term.

March 3, 2000.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellants. Starr Kelso argued.

Hon. Alan G. Lance, Attorney General; Michael S. Gilmore, Deputy Attorney General, Boise, for respondents. Michael S. Gilmore argued.

SILAK, Justice.

This is an appeal from an action in which appellant Selkirk Seed (Selkirk) sought a declaratory judgment stating that the Office of the Idaho Attorney General did not have authority to represent non-governmental insureds of the Idaho State Insurance Fund (SIF). Selkirk's motion for summary judgment was granted in part and denied in part.

## I.

### FACTS AND PROCEDURAL BACKGROUND

#### A. Facts

In 1995, the Idaho Legislature passed the Legal Services Unification Act, which restricted the use of private attorneys in representing state governmental entities. Section 67–1401 of the Idaho Code, as amended by the Legal Services Unification Act, states that it is the duty of the Attorney General "[t]o perform all legal services for the state and to represent the state and all departments, agencies, offices, officers, boards, commissions, institutions, and other state entities, in all courts and before all administrative tribunals or bodies of any nature." I.C. § 67–1401(1). Section 67–1406 of the Idaho Code further states that unless one of the enumerated exceptions applies, no "department, agency, office, officers, board, commission, institution or other state entity shall be represented by or obtain its legal advice from an attorney at law other than the attorney general...."

The Office of the Attorney General determined that SIF fell under the purview of the Act, and in October 1995, the Attorney General and SIF entered into an agreement for the provision of legal services by the Office of the Attorney General. Pursuant to the agreement, the Office of the Attorney General defended SIF and Selkirk, SIF's insured, against a worker's compensation claim filed by Anthony J. LaMarsh (LaMarsh). The attorney general assigned special attorney general Max Sheils (Sheils) to defend SIF and Selkirk, but a dispute subsequently arose concerning Sheils' defense against LaMarsh's claim.

## B. Procedural Background

On May 14, 1996, Selkirk filed a declaratory judgment action against respondents SIF, SIF General Manager Drew S. Forney, and Attorney General Alan G. Lance. Selkirk alleged that the Attorney General had appointed Sheils without notice or consultation with Selkirk. Selkirk also alleged that Sheils had taken actions that were not consistent with Selkirk's interests. Selkirk further alleged that, by representing private insureds such as Selkirk, the Attorney General was acting outside his statutory and constitutional authority. Selkirk filed an amended complaint on May 20, 1996, adding breach of contract and violation of the covenant of good faith and fair dealing claims against Sheils and SIF Claims Bureau Chief Julie Cooper. Selkirk did not allege, in either the original or the amended complaint, that the Attorney General lacked the authority to represent SIF.

On June 4, 1996, Selkirk filed a motion for partial summary judgment on the first two claims. In a supporting memorandum, Selkirk stated: " For the purposes of this motion, Plaintiffs stipulate that the Attorney General can represent the State Insurance Fund, itself, in its capacity as a state agency." That same day, respondents filed a motion to dismiss for failure to state a claim pursuant to I.R.C.P. 12(b)(6). A hearing on both motions was held on July 3, 1996.

Eight months later, on March 10, 1997, Selkirk filed a motion to disqualify the Attorney General from representing Forney and SIF. Selkirk also sought to withdraw its earlier stipulation that the Office of the Attorney General could represent SIF. The motion alleged that according to several "newly discovered documents," SIF was not a state agency, making the Attorney General's representation of SIF illegal. These "new" documents included two private legal opinions, both prepared in 1995, one pertaining to SIF and the other to the Idaho Health Facilities Authority. Selkirk also pointed to a 1992 Attorney General's Legal Guideline discussing the status of the Idaho Housing Authority under the Public Records Act, as well as Ada County property tax information and correspondence between Forney and the attorney of former Governor Phil Batt.

Between May and June, 1997, Selkirk scheduled the depositions of several individuals involved in *Berg v. Forney*, Bonner County case no. CV–95–00791. At that point, there had been no argument or decision concerning Selkirk's motion to disqualify the Attorney General. Respondents filed a motion for a protective order on May 21, 1997, requesting that the district court vacate the depositions.

The district court heard oral argument on the motion for protective order on May 23, 1997. The court issued its decision on the motion from the bench, stating that it would not allow the depositions concerning the fraud allegedly perpetrated in *Berg v. Forney* because a final judgment had been entered in that case, and the issue of any fraud in *Berg v. Forney* was not part of a case or controversy before the court.[1]

In a memorandum decision entered on May 29, 1997, the district court denied the respondents' motion to dismiss, and ruled that while the Office of the Attorney General was not required to represent SIF, SIF was free to choose the Attorney General as counsel. The Industrial Commission dismissed LaMarsh's worker's compensation complaint shortly after the district court granted partial summary judgment in favor of Selkirk. Selkirk subsequently stipulated to dismissal of the claims against Sheils and Cooper.

Both parties appealed. The appeals were consolidated, and respondents eventually withdrew their appeal.

## II.

### ISSUES ON APPEAL

The issues before the Court on appeal are as follows:

A. Whether this case should be decided under the public interest exception to

---

1. In *Berg v. Forney,* presided over by the same judge as the instant case, the district court ruled that SIF was a state agency, required to obtain its legal services from the Attorney General under I.C. § 67–1401.

mootness for cases capable of repetition but evading review.

B. Whether SIF is required to obtain its legal services from the office of the Attorney General.

C. Whether SIF may contract with the Attorney General to represent its private/nongovernmental insureds such as Selkirk.

D. Whether the district court abused its discretion by not permitting Selkirk to take the scheduled depositions that pertained to "fraud" perpetrated on the district court in *Berg v. Forney*.

## III.

## STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *See, e.g., First Security Bank v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998); *Richards v. Idaho State Tax Comm'n,* 131 Idaho 476, 478, 959 P.2d 457, 459 (1998). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See Murphy,* 131 Idaho at 790, 964 P.2d at 657.

## IV.

## ANALYSIS

A. **While This Appeal Is Moot, It May Be Decided Under The Public Interest Exception For Cases That Are Capable Of Repetition But Evading Review.**

■ Selkirk's first claim asked the district court to issue a declaratory judgment stating that the Attorney General did not have authority to represent SIF's non-governmental insureds. The respondents argue that this claim became moot when LaMarsh's worker's compensation claim was dismissed by the Industrial Commission. Respondents argue, nevertheless, that the Supreme Court should

hear the appeal under the public interest exception to mootness.

■ Ordinarily, where there is no longer a live controversy between the parties, the case is dismissed as moot. *See Great Beginnings Child Care, Inc. v. Office of Governor of State of Idaho,* 128 Idaho 158, 911 P.2d 751 (1996). This Court has recognized, however, "that it is in the public interest to decide cases which are 'susceptible to repetition yet evading review.'" *Id.* at 160, 911 P.2d at 753 (quoting *Ellibee v. Ellibee,* 121 Idaho 501, 503, 826 P.2d 462, 464 (1992)).

This Court may, in its discretion, consider the appeal even though there is no longer a live controversy between the litigants. Whether the Attorney General has authority to represent SIF's private insureds is an issue that tends to evade review because worker's compensation claims before the Industrial Commission will usually be resolved before an action could make its way through district court. We therefore conclude that the public interest exception to mootness applies in this case, and decline to dismiss the appeal.

B. **Whether The Fund Is Required To Obtain Its Legal Services From The Office Of The Attorney General.**

The district court, in its memorandum decision, granted partial summary judgment to Selkirk on this issue: " It is the conclusion of this Court that [I.C. § 67–1401] does not obligate the State Insurance Fund ... to utilize the legal service of the Office of the Attorney General." Since Selkirk prevailed on this issue below, and respondents do not raise it on cross-appeal or as an additional issue on appeal, the issue is not properly before the Court in this appeal. We therefore decline to address the issue at this time.

C. **SIF May Contract With The Attorney General To Represent Its Private/Nongovernmental Insureds Such As Selkirk Seed.**

1. **The Attorney General has authority to represent some private interests.**

Selkirk argues that the "quintessence of Idaho Code § 67–1401 is the Attorney Gen-

eral's duty to represent the state in its sovereign capacity" and that I.C. §§ 67–1401 and 67–1406 do not give the Attorney General authority to represent the "people of the State." Selkirk also argues that representing the "people of the state" is reserved to the county prosecutors in the individual counties, citing *State ex rel. Haman v. Fox*, 100 Idaho 140, 143, 594 P.2d 1093, 1096 (1979).

This argument is unpersuasive. The instant case does not involve an attempt by the Attorney General to represent the interests of the "people of the state" in the manner that phrase was used in *Haman*. That case involved an action brought by the Prosecuting Attorney of Kootenai County "on behalf of the people of the state of Idaho to establish public rights in and to water front property on Lake Coeur d'Alene." *Haman*, 100 Idaho at 141, 594 P.2d at 1094. The *Haman* Court held that Section 31–2604(1) of the Idaho Code, which imposes upon county prosecuting attorneys the duty of prosecuting actions in which the "people of the state . . . are interested, or a party," amounted to a statutory grant of standing under the circumstances of that case. *See id.* The Supreme Court tangentially observed that a lawsuit filed previously by the Idaho Attorney General had failed because the Attorney General's duty to represent "the people of the state" had been statutorily eliminated in 1887. *See id.* at 142–43, 594 P.2d at 1095–96. *Haman* concerned the alleged rights and interests of the "people of the state" *as a whole* to access private property. The Attorney General does not seek to represent the "people of the state" in the instant case, however, but rather the interests of private entities insured by SIF.

Selkirk also argues that the Office of the Attorney General has no authority under Idaho law to represent private interests. This argument is also unpersuasive. Respondents cite several statutes discussing the Attorney General's authority to represent private interests and entities. For example, the Uniform Interstate Family Support Act, Chapter 10, Title 7 of the Idaho Code, authorizes the Attorney General to represent private persons seeking assistance in obtaining child support:

> **Duty of the Attorney General.**—If the Attorney General determines that the support enforcement agency is neglecting or refusing to provide services to an individual, the attorney general may order the agency to perform its duties under this chapter or *may provide those services directly to the individual.*

I.C. § 7–1020 (emphasis added).

The Attorney General is also authorized to represent individuals under Idaho's Public Assistance Law, Chapter 2, Title 56 of the Idaho Code. Section 56–203C of the Idaho Code states:

> **Powers of Department.**—(1) In order to carry out its responsibilities imposed under this chapter . . . the State Department of Health and Welfare, *through the Attorney General* or respective county prosecuting attorney, or through private counsel is hereby authorized to take the following action
>
> . . .
>
> (b) *Petition to establish paternity* and order genetic testing of any individual involved in the paternity action;
>
> (c) *Petition to modify an order for support* in accordance with the Idaho Child Support Guidelines at the request of an obligor, obligee or state agency providing services under Title IV–D of the Social Security Act;
>
> (d) *Petition to enforce an order for support* of a child or a spouse or a former spouse who is living with the child for whom the individual also owes support; and
>
> (e) *Intervene in a divorce or a separate maintenance action* or proceeding supplemental thereto, for the purpose of advising the court regarding support of a child or advising the court as to the financial interest of the State of Idaho therein without necessity of the further leave of the court.

(Emphasis added). This section is particularly enlightening, since it shows that the Attorney General may assist private individuals who receive services from state agencies.

The authority of the Attorney General to represent private interests under the aegis of state entities is demonstrated in other statutes. For example, the Attorney General, in conjunction with the Idaho Department of Insurance, is authorized to represent the interests of private individuals who own title insurance where the title insurance company has violated its bond. *See* I.C. § 41–2711. The Office of the Attorney General may also, as part of its representation of the Idaho Department of Labor, file suit against an employer for unpaid wages and other compensation on behalf of individual employees. *See* I.C. § 45–617; I.C. § 67–1401. By the same token, as legal representative of the Idaho Commission on Human Rights, the Attorney General is authorized to represent private individuals whose civil rights have been violated. *See* I.C. §§ 67–5907, 67–5908; I.C. § 67–1401.

The Office of the Attorney General is not precluded from representing all private interests. The statutes listed above indicate that the Attorney General may represent private interests in conjunction with state departments, agencies and commissions.

### 2. SIF is a state entity which may contract with the Attorney General for the provision of legal services.

The only remaining question is whether SIF is the sort of entity which can legally use the Attorney General as its legal representative. Selkirk argues that SIF is not a state agency, but that it has the status of a private insurance company, citing *Rivera v. Johnston*, 71 Idaho 70, 225 P.2d 858 (1950); *Atwood v. State*, 80 Idaho 349, 330 P.2d 325 (1958); *State v. Musgrave*, 84 Idaho 77, 370 P.2d 778 (1962).

While these cases each state that SIF has the status of a private insurance company, they do so in different contexts. In *Rivera*,

the Court held that SIF had waived its right to raise the statute of limitations as a defense when it made a number of admissions concerning the claimant's work-related accident. *See Rivera*, 71 Idaho 70, 75–76, 225 P.2d 858, 861. The *Rivera* Court mentioned that SIF "has the status of a private insurance company." *Id.* at 75, 225 P.2d at 861 (citing *Brady v. Place*, 41 Idaho 747, 755, 243 P. 654 (1926) (on motion to retax costs)).[2]

In *Atwood*, the Court held that filing a claim with SIF "was not equivalent to and does not meet the requirement of the filing of a claim with the Industrial Accident Board" because SIF was "an independent agency and is not an arm of the Industrial Accident Board, and has the status of a private insurance company." *Atwood*, 80 Idaho at 353, 330 P.2d at 326 (citing *Rivera*, 71 Idaho 70, 225 P.2d 858). Therefore, *Atwood* only establishes that notice of a work-related accident to SIF alone does not satisfy the statute of limitations.

In *Musgrave*, in holding that SIF's money did not belong to the state treasury, this Court noted that while SIF is not a corporation, it has "some of the characteristics of a private corporation and occupies a similar status." *Musgrave*, 84 Idaho at 88, 370 P.2d at 784 (citing *Atwood*, 80 Idaho 349, 330 P.2d 325; *Rivera*, 71 Idaho 70, 225 P.2d 858; *Brady v. Place*, 41 Idaho 747, 755, 243 P. 654; *Gilmore v. State Comp. Ins. Fund*, 23 Cal. App.2d 325, 73 P.2d 640 (1937)). In its holding, the Court in *Musgrave* acknowledged that while SIF was similar to a private insurance company, it was nonetheless not a private corporation. *Musgrave*, 84 Idaho at 88, 370 P.2d at 784. The *Musgrave* Court also characterized SIF as "an agency of the state created for the purpose of carrying on and effectuating a proprietary function as distinguished from a governmental function. It serves a 'public purpose' but not a 'govern-

---

2. In *Brady*, the Supreme Court awarded costs to Brady, who successfully appealed SIF's denial of worker's compensation. SIF argued that since the Idaho Department of Finance supervised the payment of claims, the award of costs was actually a charge against the state, and that no such award was allowable "unless there is an express provision of statute therefore...." *Brady*, 41 Idaho at 753, 243 P. at 654. The Court held that

the Department of Finance, "while defendant, is thus only administrating the insurance fund, which, the same as any private insurance company, is answerable for the payment to the employee." *Id.* at 755, 243 P. at 654. The Court's language on *Brady* only emphasized the fact that the state was liable neither for compensation claims made against SIF, nor the cost of litigating those claims.

mental purpose.'" *Musgrave,* 84 Idaho at 85, 370 P.2d at 782.

This Court, in *Board of County Commissioners v. Idaho Health Facilities Authority,* stated that the Idaho Health Facility Authority, "[l]ike the state insurance fund ... is a public body but it is not an agency of the state within the meaning of all the prohibitions against state action within the Idaho Constitution." 96 Idaho 498, 508, 531 P.2d 588, 598 (1975). While this case indicates that SIF may not be a state agency in all respects, it nonetheless states that SIF is a "public body," suggesting that SIF is a state entity of some sort. *Id.*

The organization of the SIF also indicates that it is a state entity. The State Insurance Fund was created at the command of the state legislature. *See* I.C. 72–901 *et seq.* The employees of SIF are members of the public employee retirement system. *See* I.C. § 72–906. The state treasurer is the custodian of SIF's assets. *See* I.C. § 72–910. The governor appoints SIF's five-member board of directors, two members of which must be state legislators. *See* I.C. § 72–901(2). Idaho law also prohibits SIF from operating as an insurer outside the state of Idaho. *See* I.C. § 72–901(5). These statutes provide further evidence that SIF is not a private insurance company in all contexts, but rather is an entity of the state.

■ Idaho Code § 67–1401 states that it is the duty of the Attorney General "to represent the state and all departments, agencies, offices, officers, boards, commissions, institutions and *other state entities,* in all courts and before all administrative tribunals or bodies of any nature." (Emphasis added). The insurance policy purchased by Selkirk gives SIF, as insurer, the right and duty to defend its insureds. The insurer's right and duty to defend gives the insurer the right to control the defense. *See Mutual of Enumclaw v. Harvey,* 115 Idaho 1009, 1012, 772 P.2d 216, 219 (1989) (observing that "the [insurance] [c]ompany has the right to control the defense"); *Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 611 P.2d 149, 155 (1980) ("[T]he absolute control of the trial and settlement is in the hands of the insurer"). The State Insurance Fund is autho-

rized to contract for legal services. *See Musgrave,* 84 Idaho at 88–80, 370 P.2d at 785; I.C. § 72–906. Given the broad language employed in I.C. § 67–1401 and the extent to which the state government is involved with SIF, this Court holds that the Office of the Attorney General acts within the bounds of its statutory authority when it contracts to represent SIF and its non-governmental insureds.

**D. The District Court Did Not Abuse Its Discretion In Preventing The Depositions Concerning The "Fraud On The Court" In *Berg v. Forney.***

■ Selkirk argues that the district court abused its discretion in granting the protective order blocking the depositions concerning the alleged fraud perpetrated on the court in *Berg v. Forney.* The rule governing such protective orders states:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matter relating to a deposition, the court in the district where the deposition is to be taken *may* make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the discovery not be had....

I.R.C.P. 26(c) (emphasis added). This Court has held that the use of the permissive word "may" denotes the exercise of discretion. *See Walborn v. Walborn,* 120 Idaho 494, 501, 817 P.2d 160, 167 (1991). Given the permissive language of the rule, the district court's decision to grant a protective order is discretionary and will not be overturned absent an abuse of that discretion.

■ When a trial court's discretionary decision is reviewed on appeal, the appellate court considers: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) and whether the court reached its decision by an exercise of reason. *See Sun Valley Shop-*

*ping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Selkirk argues that it was entitled to take the depositions because the discovery of evidence relating to the alleged "fraud on the court in *Berg v. Forney* and continuing into this case" would have "very probably impacted not only the legal position argued by the Fund but also the ultimate decision of the Court on the merits." Selkirk argues that the documents underlying its motion to disqualify the Attorney General provide prima facie evidence of the alleged fraud on the court. Selkirk further argues that the district court abused its discretion because it prevented the depositions only because of the delay in issuing its decision on the summary judgment motion argued more than six months earlier.

■ Selkirk's arguments are unpersuasive for two reasons. First, the district court's decision was not based solely on the lateness of the decision on the summary judgment motion. The district court specifically stated that the decision in *Berg v. Forney* was final, and the alleged fraud on the court was not part of a "case or controversy" properly before it. Additionally, the proper remedy for fraud upon the court is setting aside the judgment obtained by the fraud in question. *See* I.R.C.P. 60(b). Selkirk seeks a remedy in a completely different case than that in which the fraud allegedly occurred. The district court's decision was reached by the exercise of reason, was within the boundaries of its discretion, and was consistent with relevant principles of law.

■ Second, none of Selkirk's "newly discovered" documents are persuasive evidence of fraud on the court. Selkirk claims that its allegations of fraud are based on legal opinion letters which explain why several entities are not "state agencies." None of these letters are mandatory legal authority, however, and none of them carry significant persuasive weight. Only one of these letters, a private opinion letter prepared by an attorney, dis-

cussed the status of SIF with respect to I.C. § 67–1401. The other letters are relevant only by analogy. One letter, a legal guideline prepared by the Office of the Attorney General (which Selkirk repeatedly mischaracterizes as "a formal Attorney General opinion"), states that the Idaho Public Records Law, Sections 9–337 through 9–347 of the Idaho Code, does not apply to the Idaho Housing Agency which is an "independent public body corporate and politic" rather than a state or local agency.

Selkirk argues that these letters were somehow inconsistent with a position that the respondents had made in *Berg v. Forney* in such a way that made the respondents' actions fraudulent. Selkirk also argues that it somehow relied to its detriment on the Attorney General's arguments and the result in *Berg v. Forney.* Any reliance on these letters, none of which are mandatory authority governing interpretation of I.C. § 67–1401, was unreasonable.

Selkirk's allegations that a fraud was perpetrated against the district court in *Berg v. Forney* are completely meritless, especially since the allegations were relevant, if at all, only to the issue of whether SIF is required to obtain legal services from the Office of the Attorney General.[3] As explained above, that issue is not properly on appeal at this time because Selkirk prevailed on that issue in the district court. We hold that the district court did not abuse its discretion in preventing the depositions Selkirk requested.

**V.**

**CONCLUSION**

We hold that SIF may contract with the Attorney General to defend SIF's non-governmental insureds in worker's compensation proceedings before the Industrial Commission. We also hold that the district court did not abuse its discretion in preventing the depositions of individuals involved in *Berg v. Forney.* No costs or fees to either party.

---

**3.** Selkirk conceded in a response to one of the respondents' motions that the alleged fraud on the court was not relevant to this litigation: "The *Court* may wish to discover why and what occurred on the part of the Attorney General, State Insurance Fund, and Mr. Hohnhorst and Mr. Erbland in *Berg,* and whether there was a conspiracy to defraud this Court, but that is not an issue for the parties in this case." (Emphasis in original.)

Chief Justice TROUT, Justices
SCHROEDER, WALTERS and KIDWELL,
concur.