12 P.3d 1256

**In re SRBA Case No. 39576, Re Wild & Scenic Rivers Claims: 75–13316, 77–11941, 78–10668, 78–11961, 81–10472, 81–10472, 81–10513, 81–10625.**

**POTLATCH CORPORATION and Hecla Mining, Appellants,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 25153, 25154.**

Supreme Court of Idaho, Boise, January 2000 Term.

Oct. 27, 2000.

Givens Pursley, LLC, Boise, for appellant Potlatch Corporation. Jefferey C. Fereday argued.

Root & Schindler, P.C., Denver, for appellant Hecla Mining Company. Thomas C. Root argued.

Hon. Betty H. Richardson, United States Attorney's Office, Boise; United States Department of Justice, Washington, DC, for respondent; Sean H. Donahue, United States Department of Justice, Washington, DC, argued.

SCHROEDER, Justice.

This case arises from the Snake River Basin Adjudication in which the district court granted in part and denied in part the United States' motion for partial summary judgment on claims the United States makes for reserved water rights pursuant to the Wild and Scenic Rivers Act.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The United States claims federal reserved water rights for the following rivers pursuant to the Wild and Scenic Rivers Act of 1968 [1]: the Middle Fork of the Salmon, the Middle Fork of the Clearwater (including its two tributaries: the Lochsa River and the Selway River), the Rapid River and the main stem of the Salmon.[2] The district court agreed with

---

**1.** 16 U.S.C. § 1271–§ 1287.

**2.** Together, the Lochsa River and the Selway River are known as the "Clearwater System".

The United States' claims to water rights in all of these rivers were consolidated under case no. 75–13316.

the United States that the Wild and Scenic Rivers Act expressly reserves water for the rivers designated under the Act and granted this portion of the United States' motion for summary judgment.

The United States also requested the rights to all unappropriated flows for the Rapid River and the main stem of the Salmon.[3] Alternatively, the U.S. requested that enough water be reserved to protect the fish, wildlife, scenic and recreational values on the main stem of the Salmon and that enough water be reserved to protect the fish, wildlife and scenic values on the Rapid River. The district court denied the United States' motion for all unappropriated flows, limiting the United States to the amount necessary to fulfill the purposes of the act. That amount has not been determined.

When the United States filed its initial motion for summary judgment, the State of Idaho, Thompson Creek Mining Company, and Potlatch Corporation filed their opposition to the motion. This opposition was supported by numerous other interested parties.[4] The United States and the Thompson Creek Mining Company entered into a stipulation regarding their respective water rights. The appellants in this case are the Potlatch Corporation and the Hecla Mining Company. The State of Idaho and other parties who opposed the claim of the United States have not appealed the district court ruling.

## II.

### WILD AND SCENIC RIVERS ACT: AN OVERVIEW

Congress enacted the Wild and Scenic Rivers Act in 1968 to protect and preserve the scenic, recreational, geologic, fish and wildlife, historic, and cultural aspects of various designated rivers. 16 U.S.C. § 1271. Rivers

were classified into three categories: (1) wild rivers ('vestiges of primitive America'), (2) scenic rivers ('free of impoundments' and 'largely undeveloped') and (3) recreational rivers ('accessible by road or railroad' and 'may have some development'). 16 U.S.C. § 1273.

When Congress passed the Act, it designated eight rivers to be protected ('instant rivers') and listed twenty-seven rivers as potential additions to the Act. Five of the eight instant rivers are located in the West. Rivers can be added in a number of ways: (1) Congress can designate a river, (2) Congress can designate a river after an agency studies the river and recommends its inclusion in the Act, or (3) a State may protect a river under its law and then seek the Secretary of Interior's approval that the river meets the Act's criteria.[5]

A critical section for reserved water rights is section 13(c) of the Act which provides the following:

**(c) Reservation of waters for other purposes or in unnecessary quantities prohibited**

Designation of any stream or portion thereof as a national wild, scenic or recreational river area shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this chapter, or in quantities greater than necessary to accomplish these purposes.

## III.

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *See, e.g., First Security Bank v.*

---

**3.** These were the only rivers singled out by the United States for specific attention at this stage in the proceedings. The United States specifically acknowledged "Congress' general intent that the Act not be construed as a reservation of all unappropriated flows for *every* river designated under the Act ..." United States Consolidated Reply Memorandum in Support of its Motion for Partial Summary Judgment.

**4.** A & B Irrigation District, Burley Irrigation District, Twin Falls Canal Company, North Side

Canal Company, Harrison Canal, Burgess Canal, Peoples Canal & Irrigation Co., Progressive Irrigation District, Enterprise Irrigation District, New Sweden Irrigation District, Snake River Valley Irrigation, Idaho Irrigation District, Egin Bench Canals, Inc., and North Fremont Canal Systems, Inc.

**5.** Peter M.K. Frost, *Protecting and Enhancing Wild and Scenic Rivers in the West*, 29 Idaho L.Rev., 313, 317 (1992–93).

*Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998); *Richards v. Idaho State Tax Comm'n,* 131 Idaho 476, 478, 959 P.2d 457, 459 (1998). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See First Security Bank v. Murphy,* 131 Idaho at 790, 964 P.2d at 657. *Aberdeen–Springfield Canal Co. v. Peiper* (1999), 133 Idaho 82, 85, 982 P.2d 917, 920.

## IV.

## THE WILD AND SCENIC RIVERS ACT CREATES AN EXPRESS RESERVATION OF WATER TO FULFILL THE PURPOSES OF THE ACT.

█ Potlatch Corporation and Hecla Mining Company maintain that the Wild and Scenic Rivers Act does not expressly reserve water, maintaining that the language contained in Chapter 13(c) is a negative limitation of a water right, not an affirmative legislation reservation of water for purposes of the Act. They argue that Congress debated the issue of reserving water but failed to act. According to Potlatch Corporation and Hecla Mining Company, Congress merely set an upper limit on any water that a court might find Congress to have implicitly reserved. They also maintain that the Reserved Water Rights Doctrine can only be applied where there is an urgent need for water, and there has been no demonstration of that need in this case. Additionally, they argue that the Wild and Scenic Rivers Act does not reserve land to which the Reserved Water Rights Doctrine might apply. Potlatch Corporation asserts that the primary purpose of the Act was to prevent dam construction, not create federal water rights. Hecla Mining Company characterizes the bill as an environmental statute intended to address water pollution, but not intended to reserve water.

█ Whether there has been a federal reservation of water, and the quantity of water reserved, are questions of legislative intent. *United States v. New Mexico,* 438 U.S. 696, 699, 98 S.Ct. 3012, 3013, 57 L.Ed.2d 1052, 1056 (1978). Legislative intent is reflected first and foremost in the language of

the statute itself. *See Peasley Transfer & Storage Co. v. Smith,* 132 Idaho 732, 742, 979 P.2d 605, 615 (1999): "We interpret statutes according to the plain, express meaning of a provision in question, and we will resort to judicial construction only if the provision is ambiguous, incomplete, absurd, or arguably in conflict with other laws." There is no need to go beyond the language of the statute, when that language is clear and unambiguous. *State v. Hagerman Water Right Owners, Inc.,* 130 Idaho 727, 732, 947 P.2d 400, 405 (1997).

The legislative intent is awkwardly stated in the negative in section 13(c) of the Wild and Scenic Rivers Act, but it is clear that Congress intended to reserve water to fulfill the purposes of the Act:

(c) Reservation of waters for other purposes or in unnecessary quantities prohibited

Designation of any stream or portion thereof as a national wild, scenic or recreational river area shall not be construed as a reservation of the waters of such streams for purposes other than those specified in this chapter, or in quantities greater than necessary to accomplish these purposes.

Section 13(c) makes little sense unless the legislation reserves water to fulfill the purposes of the Act. It would be anomalous to logic to say that the Act which was expressly created to preserve free-flowing rivers failed to provide for the reservation of water in the rivers. Such a result would run contrary to the language of section 13(c) and the Congressional declaration of policy:

16 U.S.C. § 1271 reads:

**Congressional declaration of policy**

It is hereby declared to be the policy of the United States that certain selected rivers of the nation which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, *or other similar values,* shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations. The Congress declares that the established national policy

of dam and other construction at appropriate sections of the rivers of the United States needs to be complemented by a policy that would preserve other selected rivers or sections thereof in their free-flowing condition to protect the water quality of such rivers and to fulfill other vital national conservation purposes. (emphasis added).

■ A fundamental principle of statutory construction is that a provision should not be construed to make surplusage of provisions included within the act. *Ada County Assessor v. Roman Catholic Diocese of Boise,* 123 Idaho 425, 849 P.2d 98 (1993). Standard rules of statutory interpretation require this Court to give effect to the legislature's intent and purpose, and to every word and phrase employed. *Sweitzer v. Dean,* 118 Idaho 568, 571, 798 P.2d 27, 30 (1990).

While it is not necessary to look to legislative history in this case, that legislative history overwhelmingly supports the idea that Congress intended a reservation of water to fulfill the purposes of the Act. During floor debate on the original wild and scenic rivers legislation, which contained language that is substantially identical to section 13(c), Frank Church, the sponsor of the bill, answered questions regarding water rights. He quoted from the Department of Agriculture's analysis of the bill, which he said reflected his own views: *"The enactment of the bill is itself a reservation of water needed to carry out its purposes."* 112 Cong. Rec. 403, 433 (Jan. 17, 1966). (emphasis added).

The claim that the Act was merely intended to prevent the construction of dams or as an environmental measure runs contrary to logic and legislative history. If the Act were only intended to prevent the construction of dams, Congress could have said simply that no dams shall be constructed on certain rivers. A broad declaration of purpose including scenic and recreational purposes would have been unnecessary and unwarranted. The nature of the debate that took place in Congress can be seen in comments by Senator Church which indicate that issues addressed by the Wild and Scenic Rivers Act were much broader than dams or the environment:

The affluent society has built well in terms of economic progress, but has neglected the protection of the very water we drink as well as the values of fish and wildlife, scenic, and outdoor recreation resources. Although often measureless in commercial terms, these values must be preserved by a program that will guarantee America some semblance of her great heritage of beautiful rivers.

* * * *

Mr. President, a national wild river area, as defined by S. 119, is one located in a sparsely populated, natural, and rugged environment where the river is free flowing and unpolluted, or where the river should be restored to such condition, in order to promote the public use and enjoyment of the scenic, fish, wildlife, and outdoor recreation values.

Cong. Rec. 21742 (August 8, 1967).

Aside from the direct legislative history, virtually everyone who has written in this area agrees that the Wild and Scenic Rivers Act reserves water.[6] That is the ineluctable conclusion that attaches to the words of the Act, the Congressional history, and logic.

---

**6.** The State of Idaho and Thompson Creek Mining Company. State of Idaho's Brief in Response to the United States' Motion for Partial Summary Judgment, at 10; Thompson Creek's Memorandum in Response to United States' Motion for Partial Summary Judgment, at 11.

"... section 13(c) is a left-handed assertion of the reserved rights doctrine." A. Dan Tarlock and Roger Tippy, *The Wild and Scenic Rivers Act of 1968,* 55 Cornell L.Rev. 707, 734 (1970). "In contrast to the Wilderness Act, the Wild and Scenic Rivers Act expressly reserves water rights sufficient to fulfill the purposes of the act." Ka-

rin P. Sheldon, *Water for Wilderness,* 76 Denv. U.L.Rev. 555, 567 (1999). "It negatively states but clearly establishes a federal reservation of water in each river corridor to meet its specific flow needs and the purposes of the Act." Peter M.K. Frost, *Protecting and Enhancing Wild and Scenic Rivers in the West,* 29 Idaho L.Rev. 313, 317 (1992–93). "Congress expressly claimed unappropriated water in amounts and flow levels necessary to fulfill the purposes of the Wild and Scenic Rivers Act." Brian E. Gray, *No Holier Temples: Protecting the National Parks through Wild and Scenic River Designation,* 58 U. Colo.L.Rev. 551, 555 (1988).

## V.

### THE CLAIM OF THE UNITED STATES TO UNAPPROPRIATED FLOWS IN THE MAIN STEM OF THE SALMON RIVER AND THE RAPID RIVER IS LIMITED TO THE MINIMUM AMOUNT NECESSARY TO FULFILL THE PURPOSES OF THE ACT.

The United States requested the district court to determine as a matter of law that the United States has a reserved water right in all the unappropriated flows in the main stem of the Salmon River and the Rapid River. It did not make a similar claim to the other rivers involved in this litigation. The district court denied this portion of the United States' motion for summary judgment, ruling that the United States *"is entitled to the minimum quantity necessary to fulfill the purposes of the Wild and Scenic Rivers Act . . . ."* (emphasis added).

The district court defined the purposes of the Wild and Scenic Rivers Act to be "to preserve rivers in their free flowing condition and to protect and preserve the designated rivers and their immediate environments for the benefit and enjoyment of present and future generations," stating that the United States must "prove the minimum quantity necessary to fulfill these general purposes." The United States has not appealed this portion of the district court's ruling.

The minimum amount necessary to fulfill the purposes of the Wild and Scenic Rivers Act must be determined in further proceedings before the district court.

## VI.

### CONCLUSION

The decision of the district court granting in part and denying in part the United States' motion for summary judgment is affirmed. Costs on appeal are awarded to the United States.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.

